## TOWNSEND *v.* SMITH, ordinary.

1. The provision of the constitution of Georgia inhibiting the delegation by the legislature to any county of the right to levy a tax for any purpose except for those specified in art. 7, sec. 6, par. 2, among which purposes is that of providing for sanitation, is not offended by an act authorizing the appropriation of funds for carrying on and aiding in the work of the eradication of cattle-ticks and the suppression of contagious and infectious diseases of live stock. The expression, "provide for necessary sanitation," is sufficiently comprehensive to authorize the raising and the expenditure of money for the purposes within the purview of the statute referred to.

2. The words, "to pay the county police, and to provide for necessary sanitation," were not stricken from art. 7, sec. 6, par. 2, of the constitution (Civil Code, § 6562) by the amendment proposed by the act of August 4, 1910 (Acts 1910, p. 33). The only change made in this paragraph of the constitution was the elimination of the words, "in instructing children in the elementary branches of an English education only."

MARCH 3, 1916.

Petition for injunction.    Before Judge Jones.    Lumpkin superior court.    May 11, 1915.

W. B. Townsend brought his petition against H. B. Smith, ordinary, alleging, that the defendant was proceeding to expend public funds of the county, raised by taxation for the purposes provided by law, in aiding the State or the United States, or both, in putting into effect, in the county of Lumpkin, the law embodied in an act approved August 16, 1909, known as an act to protect the live stock of the State of Georgia from contagious or infectious diseases; that the ordinary purposes to expend the aggregate sum of $1,500 or other large sum, in constructing vats, employing inspectors, and putting into operation other means to carry into effect the provisions of the act referred to; that the expenditures contemplated are without authority in law; that it is not the purpose of the ordinary to use the public funds for quarantine purposes, but his purpose is to apply the funds to the eradication of cattle-ticks in the county of Lumpkin; that there are no cattle in any of the counties adjoining Lumpkin county, infected with contagious diseases, sufficient to warrant a quarantine against such cattle; that the ordinary is acting under the provisions of section 7 of the act of the legislature referred to above, which is embodied in section 2079 of the Civil Code; that the application of any public funds of the county raised by taxation for the purposes above mentioned is illegal

and void; and that so much of said act and of said code section as attempts to authorize the application of public funds to the purposes so stated is unconstitutional and void, in that it allows the application of public funds raised by taxation to a purpose not within the purview of that portion of the constitution contained in art. 7, sec. 6, par. 2, enumerating the purposes for which taxation by a county may be authorized. The defendant demurred generally and specially, and filed an answer to the petition. Testimony was submitted at the interlocutory hearing, and after the submission the court refused the injunction, and the petitioner excepted.

O. J. Lilly, for plaintiff.

J. F. Pruett, R. H. Baker, and H. H. Perry, for defendant.

BECK, J. (After stating the foregoing facts.) The acts of the ordinary are alleged to be void upon the sole ground that the law from which he derives the authority to expend the funds of the county to protect the cattle against infectious diseases is unconstitutional and void. In the brief of counsel the position is taken, that, under the allegations of the petition, whether the act of the legislature is void because unconstitutional or not, the ordinary is not empowered by that act to expend the public funds of the county for the purpose contemplated, inasmuch as the act itself, so far as it authorizes an appropriation of public funds for expenditure in the employment of means to effect the eradication of cattle-ticks, vests the power to make the appropriation in the county commissioners or board of roads and revenues. But we do not think that this attack upon the authority of the ordinary to act and to exercise powers conferred in the statute upon the county commissioners or board of roads and revenues should be considered now, as it is mentioned for the first time in the brief of counsel for the plaintiff. It is true that in the petition the charge is made that the acts of the ordinary are illegal, but counsel goes further in the petition and in a succeeding paragraph states why the acts are illegal, and the only reason assigned is that the source of the ordinary's authority to make the appropriation of the funds is the act in question, and that the same is without validity because it violates the constitution of the State of Georgia in that it authorizes the use of money raised by taxation for a purpose not contemplated in that section of the constitution limiting the taxing power of counties. That section reads as follows: "The General Assembly shall not have

power to delegate to any county the right to levy a tax for any purpose, except for educational purposes; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coronors, and for litigation, quarantine, roads, and expenses of courts; to support paupers, and pay debts heretofore existing; to pay the county police, and to provide for necessary sanitation." Code, § 6562. We agree with counsel for the plaintiff that the purpose for which the ordinary is proceeding to use the public funds of Lumpkin county does not fall under any of the purposes for which a county may levy a tax as enumerated in that section, unless it falls under the head of sanitation. Does it fall under that head? There is abundant evidence in the record to authorize the trial court in finding that the prevalence of cattle-ticks in Lumpkin county would cause the cattle to become infested with them; and that when that is the case, the cattle, because of the presence of a parasite of which the cattle-ticks are carriers, would become infected with splenetic, southern or Texas fever. There is also evidence authorizing the finding that a large portion of the cattle of Lumpkin county was at the time affected with the cattle-tick, and that the disease of cattle known as splenetic fever did exist in Lumpkin county. There is evidence also showing that such fever was a disease seriously affecting the cattle attacked by it, often resulting fatally.

Taking these facts into consideration, and the fact that the flesh of cattle and milk of cows are articles of food of general consumption, it would seem that the prevention of an infectious malady which, unless checked, would become general among the cattle of a given county and thereby render the flesh of such cattle and the milk of cows diseased, unwholesome, and unfit for food, was a matter affecting the health of the people of the community where this disease appeared; and, this being true, that measures to eradicate the causes of the disease or to prevent its spreading could have been properly enacted by the legislature as a measure "to provide for necessary sanitation." No one would doubt for a moment that if the legislature were to prohibit the sale of diseased flesh of hogs or cattle, this would be a sanitary measure; and if it were necessary to expend money in carrying out and enforcing such sanitary measures, a tax levy to provide the money would be a tax providing for sanitation. We have several sections of our code other

than those taken from the act of 1909, relating to sanitary regulations, which embrace provisions for the inspection of slaughterhouses, meat and meat-food products, and provide a penalty for the violation of such regulations; clearly showing that the securing of wholesome and untainted meat is regarded as a matter coming under the head of sanitation. It would be giving the term "sanitation" too narrow a construction to hold that it did not embrace the subject dealt with in the statute under consideration. The legislature, at any rate, must have been of the opinion that this measure was embraced within that term as employed in the constitution; and the court will not say that their conclusion was not authorized by the facts which are of common knowledge.

But counsel for plaintiff contends that the words, "to pay the county police, and to provide for necessary sanitation," which occur at the close of article 7, section 6, paragraph 2, of the constitution (Civil Code of 1910, § 6562), were eliminated from that section by the amendment to the constitution proposed by the act of August 4, 1910 (Acts 1910, p. 45), which was subsequently ratified at a general election; and that therefore counties are without authority to levy a tax for sanitary purposes. The proposal of this amendment to the constitution was made in the form of an act having a title. There is nothing in the title, or in the portion of such act that declares expressly the change to be made, which indicates any intention to go further than to strike from the paragraph which it was sought to amend the words, "in instructing. children in the elementary branches of an English education only." While a proposal by the legislature of an amendment to the constitution, to be submitted to the people, in various respects does not stand on the same footing as an ordinary act of the legislature, when a proposal of an amendment is in the form of an act having a caption, if there is an ambiguity or doubt as to its purpose in respect to what change is intended, it is legitimate to look to the caption as a means of construction.

There is a statement in the proposal of amendment, that "so that when said paragraph is amended it will read as follows:" and what purports to be a copy of the paragraph as it would read if amended as proposed follows. This omits not only the words proposed to be stricken but also a clause at the end of the paragraph having no connection with taxation for educational purposes. It

may be noted that the form is that the paragraph as amended "will" read as stated, not "shall" do so, thus taking the form of recital rather than command. This may not be sufficient to control, but it is legitimate for consideration with the other facts showing what was the proposal submitted.

The form of the ballot prescribed does not limit the extent of the amendment. *Cooney* v. *Foote,* 142 *Ga.* 647 (83 S. E. 537). Nevertheless, when the question is as to construing the proposed amendment which was submitted, and determining whether it merely proposed to strike from the paragraph sought to be amended the words, "in instructing children in the elementary branches of an English education only,"—words relating solely to restricting county taxation for educational purposes,—or whether the proposal was to strike out also other words in another part of the paragraph, having no relation to education, and dealing with wholly different subjects of taxation, the fact that the form of ballot prescribed in the act was not merely in favor of or against the proposed amendment as a whole, but added the words, "permitting counties to levy taxes for educational purposes," has some significance.

Again, the constitution as contained in the Code of 1895 (§ 5892) did not have the words, "to pay the county police, and to provide for necessary sanitation," at the close of the paragraph. Those words were added by amendment in 1908 (Acts 1908, p. 33), and adopted at the general election in October, 1908. The amendment now under consideration was proposed in 1910, when the printed code did not include the last-mentioned amendment. The Code of 1910, in which it was included, had not then been published. It is most probable that the draftsman or scrivener, in copying the paragraph as it would appear after the proposed amendment of 1910, omitted from the paragraph sought to be amended the words which it was desired to strike therefrom, and copied the remainder of the paragraph from the Code of 1895. It is highly improbable that the legislature, within two years after the concluding clause had been added by amendment to the paragraph of the constitution under consideration, intended to propose an amendment striking them out without any reference to them, and while making a change on a totally different subject. Of course, whatever they may have intended, if they clearly did submit such proposed amendment and it was adopted by the people, it became a part of

the constitution. But, in view of the entire act proposing the amendment, we think that it is plain that they did not intend to propose the striking of the last clause of the paragraph, and we are not prepared to hold that they actually did so by a blunder contrary to their intention.

The attack made in the petition before us upon the constitutionality of the act fails; and it follows that the judge did not err in refusing the injunction.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*