SMITH, commissioner, *et al. v.* STATE OF GEORGIA *et al.*

1. "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers and pay debts heretofore existing; to pay the county police, and to provide for necessary sanitation." Constitution, art. 7, sec. 6, par. 2; Civil Code, § 6562; 5 Park's Code, § 6562; Acts 1908, p. 33.

2. Under the above provision of the constitution of this State, the General Assembly was not authorized to provide for the payment of the fees of local registrars, for services rendered under the vital statistics law, out of county funds, and so much of said statute as makes provision for such

payment is in conflict with the above provision of the constitution, and is void.

3. The trial court erred in not sustaining the demurrer of the defendants to the petition for mandamus.

No. 4675. JUNE 22, 1925. REHEARING DENIED SEPTEMBER 23, 1925.

Mandamus. Before Judge Mathews. Houston superior court. November 29, 1924.

*C. E. Brunson,* for plaintiffs in error.

*Charles H. Garrett, solicitor-general, Dorsey, Howell & Heyman,* and *Samuel L. Olive,* contra.

HINES, J. The controlling question in this case is this: Can the legislature delegate to a county the right to levy a tax for the purpose of paying the fees of registrars of births and deaths under the vital-statistic laws of this State? Acts 1914, p. 157; Acts 1919, p. 273; 1 Park's Code, § 1676(m) et seq. 8 Park's Code Supp. 1922, § 1676(o) et seq. Paragraph 2 of section 6 of article 7 of the constitution of this State declares: "The General Assembly shall not have the power to delegate to any county the right to levy a tax for any purpose, except for educational purposes . . ; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers and pay debts heretofore existing; to pay the county police, and to provide for necessary sanitation." Civil Code (1910), § 6562; 5 Park's Code, § 6562. Under this provision the legislature can not confer upon a county the power to levy a tax for paying the fees of these officers, unless such power is derived from that portion of the above paragraph of the constitution which empowers the General Assembly to authorize a county to levy a tax "to provide for necessary sanitation." Formerly, officials charged with the financial affairs of a county were not authorized to purchase vaccine matter for the inoculation of persons against smallpox. *Daniel* v. *Putnam County,* 113 *Ga.* 570 (38 S. E. 980, 54 L. R. A. 292). It was doubtless due to this decision that the constitution was so amended in 1908 as to authorize the legislature to empower counties to levy taxes "to provide for necessary sanitation."

Does the language "provide for necessary sanitation" empower the legislature to authorize counties to levy taxes to pay the fees of these registrars? The duties of these officers, in a general way,

are to issue permits to bury or remove the bodies of the dead, and to receive certificates of births occurring within their respective districts, to see that these certificates are in form, record them, and forward the originals to State registrar. Without such burial permit, the body of any person, if death occurs in this State, can not be interred, deposited in a vault or tomb, cremated or otherwise disposed of, or removed from or into any registration district. 1 Park's Code, § 1676(q). Certificates of death shall give the place of death, full name of the deceased, sex, color or race, conjugal relation, date of birth, age, occupation, birthplace, name of father, birthplace of father, maiden name of mother, birthplace of mother, signature and address of informant, official signature of registrar, date of death year, certification as to medical attendance, length of residence, place of burial or removal, date of birth, and signature of undertaker. 1 Park's Code, § 1676(s). Within ten days after birth there shall be filed with the local registrar of the district in which the birth occurred a certificate of such birth. This certificate shall be made by the physician or midwife. If there was no physician or midwife in attendance, the father or mother of the child, the owner of the premises where the birth occurred, or the manager or superintendent of the public or private institution where the birth occurred, each in the order named, shall give such certificate. 1 Park's Code, § 1676(aa). The certificate of birth shall contain place of birth, full name of child, sex, whether twins, triplets, or plural birth; in case of plural birth the number of each child and order of birth, whether legitimate or illegitimate, date of birth, full name of father, residence of father, color or race of father, age of father, birthplace of father, occupation of father, maiden name of mother, residence of mother, color or race of mother, age of mother, birthplace of mother, occupation of mother, number of children born to mother, number of children of mother living, certification of the attending physician or midwife as to the attendance at birth, year, month, day, and hour of birth, and whether the child was born alive or stillborn, and exact date of filing in the office of the local registrar of such certificate. 1 Park's Code, § 1676(bb). Local registrars are required to furnish blank forms of certificates to such as require them, to carefully examine each certificate of birth or death when presented for record, to ascertain whether it has been made

out in accordance with the provisions of law. If any death certificate is incomplete or unsatisfactory it shall be his duty to call attention to the defects in the return, and to withhold the burial or removal permit until such defect is perfected. If a certificate of birth is incomplete, the local registrar shall immediately notify the informant and require him to supply the missing items of information, if they can be obtained. He is required to number each certificate consecutively, and he is also required to make a complete copy of each certificate registered in a book supplied by the State registrar, to be preserved permanently in his office as the local record, in such manner as directed by the State registrar. He shall on the tenth day of each month transmit to the State registrar all original certificates registered by him for the preceding month. 1 Park's Code, § 1676(ii).

We have gone fully into the duties required of these local registrars in order to determine whether the discharge of such duties provides, or tends to provide, for necessary sanitation. In order to justify a tax, the purpose must be to provide, first, sanitation; and second, necessary sanitation. In order to determine the question before us, it is necessary to define sanitation. A good definition of this term is found in Funk & Wagnalls New Standard Dictionary of the English Language, and is as follows: "The devising and applying of measures for preserving and promoting public health; the removal or neutralization of elements injurious to health; the practical application of sanitary science." The duties these officials are required to discharge bear a very remote, if any, relation to the devising and applying of measures for preserving and promoting the public health, the removal or neutralization of elements injurious to health, and the practical application of sanitary science. . Certainly the discharge of these duties is not necessary to the devising and applying of measures for preserving and promoting the public health. The gathering of these statistics may possibly be of some slight aid to investigators in devising methods of preserving the public health. We gravely doubt whether these statistics offer any help in discovering methods of preventing disease. Conceding, however, that these statistics furnish some aid in research work looking to the discovery of means by which disease can be prevented, we feel confident that the collection of these statistics is not such a means of providing neces-

sary sanitation as was contemplated by the framers of the amendment to the constitution. How does knowledge of the places of death, the full names, sex, color, race, conjugal relations, dates of birth, ages, occupations and birthplaces of the deceased inhabitants of this State, the names and birthplaces of their fathers and mothers, the doctors who attended them, the length of their residence and their places of burial, aid the county authorities in providing necessary sanitation in their counties? Such data might help scientists, engaged in research work, to devise and develop means and methods of sanitation; but such information does not in the slightest degree enable the county authorities to provide necessary sanitation. What the county authorities need in providing sanitation is knowledge of known, tried, and approved means and methods of sanitation.

How does information as to places of birth of children, their full names, sex, whether twins or triplets, whether legitimate or illegitimate, dates of their births, full names of their fathers, residence of their fathers, the color or race of their fathers, ages, birthplaces, and occupations of their fathers, maiden names of their mothers, residence of their mothers, color or race of their mothers, ages, birthplaces, and occupations of their mothers, number of children born to their mothers, or number of children of their mothers living, in any way contribute to providing necessary sanitation in the counties of this State? Such facts might, although we seriously doubt it, enable learned investigators to discover the means of necessary sanitation, but they would not in the slightest degree aid county authorities in providing such sanitation. In *Townsend* v. *Smith,* 144 *Ga.* 792 (87 S. E. 1039), this court held that this provision of the constitution was sufficiently comprehensive to authorize the expenditure of money for the purpose of eradicating cattle-ticks. This was put upon the ground that the fever produced by ticks in cattle rendered the flesh of such cattle and the milk of the cows diseased, unwholesome, and unfit for food, and that providing for their eradication was making provision for sanitation. Wholesome meat and milk are necessary to good health. The eradication of ticks is a means of furnishing such meat and milk. The method of their eradication was well known and effective. The statute providing for their eradication provides for the application of this known method.

That case is not authority for the proposition involved in this case.

When the amendment to the constitution which empowered the legislature to authorize counties to levy taxes "to provide for necessary sanitation" was adopted, there was no dearth of means of preventing disease. There was no lack of sanitary science. There was no insufficient research work. On the contrary, the world was deluged with a great wealth of sanitary science. There was no want of means and methods for preventing disease, preserving health, and securing longevity. The world was blest with abundant medical, psychological, and religious formulas for the prevention and cure of diseases. It was never the intention of the framers of the amendment to the constitution to use the term "sanitation" in its broadest sense. It was not remotely in the mind of the people, in adopting this amendment, to authorize the expenditure of the public funds of a county to gather data from which those engaged in medical research might discover new means of preventing disease, and in discovering new methods of securing sanitation. If we are to adopt the broadest meaning which could be given to the word "sanitation," the legislature could authorize the county authorities to expend the public funds for the establishment and maintenance of medical and dental colleges, laboratories, maternity hospitals, factories for making medicines, dispensaries, public baths, and institutions for research work designed to discover new methods of sanitation. We can not conceive that the framers of this amendment, and the people in adopting it, had any such purpose in view. Clearly their purpose was to empower the legislature to authorize a county to levy a tax for the purpose of applying known and recognized methods of sanitation, such as vaccination to prevent smallpox, serums to prevent typhoid fever, diphtheria, scarlet fever, and the like, the purification of water, the destruction of the mosquito which produces yellow fever and malaria, and other well-known methods of sanitation. This provision of the constitution must be given a plain, practical and common-sense construction. So we are of the opinion that this provision of the constitution does not empower the legislature to authorize a county to levy taxes to pay the fees of these local registrars, and that the statute authorizing their payment from the public funds of the county is unconstitu-

tional and void. From the above ruling it follows that the court below erred in not sustaining the demurrer to the petition for mandamus.

*Judgment reversed. All the Justices concur, except Gilbert, J., absent for providential cause.*

BECK, P. J., concurs in the judgment.

### ON MOTION FOR REHEARING.

HINES, J. We have two motions for a rehearing in this case, one original and the other supplemental, the former being filed by all the defendants in error, and the latter by the State of Georgia. There is also an amendment to these motions. In the original motion it is alleged that the court in its decision overlooked material provisions of the statute, the constitutionality of a portion of which is involved in this case. The first of these provisions is "That the certificate of death shall contain the following items, which are hereby declared necessary for the legal, social, and sanitary purposes subserved by the registration records." The second of these provisions is that "Certification as to medical attendance on decedent, fact and time of death, time last seen alive, and cause of death, with contributory (secondary) cause or complication, if any, and duration of each, and whether attributed to dangerous or unsanitary conditions, or employment." The third provision is that contained in section 6 of the act, which requires that the birth certificate, in the case of stillborn children, shall set forth the cause of death and the cause of stillbirth, whether premature birth, and, if born prematurely, the period of utero gestation. In the first of these motions for rehearing it is insisted that the court overlooked the material fact that the utilization by the boards of health of the information furnished by vital statistics does not involve experimentation for the determination of new principles of sanitary science, but has application to well-known and well-established principles of hygiene in the prevention and eradication of disease. In this motion it is next insisted that the decision in this case can not be reconciled with the decision in the case of *Townsend* v. *Smith,* 144 *Ga.* 792. The supplemental motion is based upon the various grounds set out in a document attached as an exhibit thereto. This document was not attached as an exhibit to the petition in this case, nor were its contents substantially stated therein, nor is there the

slightest reference to this document in any part of the record in this case. The amendment suggests that the court overlooked the law that the vital statistics law was constitutional under the police power of the State.

While we did not allude to, we did not overlook, the provisions of the statute referred to in the original motion for a rehearing. After a careful consideration of the motions for rehearing in this case, and the amendment thereto, we do not think that a rehearing should be granted. We think that our decision in this case is sound for the reasons assigned in the opinion in this case. There is another reason which confirms us in the view taken in our opinion of the statute involved in this case. We have in this State county boards of health. Acts 1914, pp. 124, 125; 1 Park's Code, § 1669(a). These boards "have full power and authority to adopt, enact, establish, and maintain all such rules and regulations, not inconsistent with the laws and constitution of this State and of the United States, as they may deem necessary and proper for protecting the health of their respective counties, and for preventing the introduction, generation, and spread of infectious and contagious diseases therein," except in incorporated cities or towns. Acts 1914, p. 124; 1 Park's Code, § 1670. These boards can "employ such officers, agents, or employees, and incur such expenses as they may deem necessary, which salaries, compensation, and expenses shall be paid out of the county treasury as are other county expenses." Acts 1914, p. 124; 1 Park's Code, § 1676. This county machinery is provided for necessary county sanitation. We have a State board of health. Acts 1914, p. 124; 1 Park's Code, § 1656. The bureau of vital statistics is an adjunct or department of the State board of health. Acts 1914, p. 157; 1 Park's Code, § 1676(m). This board has full control of the registration of vital statistics. The legislature undertook, in the statute under consideration, to require the counties of the State to pay out of county funds the fees of local registrars of vital statistics. Under the constitutional provision involved, we do not think that the legislature is authorized to provide for the payment of the expenses of a State department or State bureau out of county funds. For this reason, and for the reasons given in the opinion in this case, we think the motions for a rehearing should be denied.                                        *Rehearing denied.*