## GRINER *v.* BOARD OF COMMISSIONERS OF BULLOCH COUNTY *et al.*

No. 10490.  MAY 18, 1935.

*Remer Proctor* and *R. Lee Moore,* for plaintiff.
*Deal & Renfroe,* for defendants.

BECK, Presiding Justice.  C. B. Griner, alleging himself to be a citizen and taxpayer of Bulloch County, filed a petition for injunction against the board of commissioners of the county.  He alleged that the commissioners were proceeding to build and equip a hospital which should be owned and operated by the county; that in pursuance of their plan to build the hospital they passed a resolution to use for the payment of the same the first three series of refunding certificates of the State Highway Department of Georgia, issued to Bulloch County, being series A, due March 25, 1936, series B, due March 25, 1937, and series C, due March 25, 1938, each series being for the sum of $12,375.90, the resolution providing that the hospital shall be of such size and capacity as is necessary to care for the sick convicts, paupers, and the indigent poor of the county, and providing for limited facilities for pay patients,

and further providing that no funds of the county other than those derived from the sale of the aforementioned certificates be used in the erection and equipment of the hospital; that the board of commissioners were advertising for bids for the construction of the hospital; that the commissioners had the plans and were selecting a site on which to locate the hospital; and that they were negotiating with materialmen and contractors, etc., with the purpose of either assigning the certificates or selling them and using the proceeds to pay for the construction of the hospital. Petitioner contends that the use of these highway certificates for the purpose indicated is forbidden by article 7, section 6, paragraph 2, of the constitution of the State of Georgia, limiting taxation by counties; that the use of these certificates for the purpose indicated is without authority of law, under the Code of 1933, § 92-3701, enumerating the purposes for which a county may collect taxes; that the use of these certificates for this purpose is not authorized by the act of the General Assembly approved March 1, 1933 (Ga. L. 1933, pp. 161, 171, sec. 13), and that such use of the certificates is without warrant or authority of law. The prayers were that the board of commissioners be enjoined and restrained from using these highway certificates or the proceeds thereof for building the proposed hospital. The court refused an injunction, and the petitioner excepted.

The court did not err in refusing an injunction. Article 7, section 6, paragraph 2, of the constitution of this State (Code of 1933, § 2-5402), provides that "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except . . to support prisoners, . . support paupers, . . and to provide for necessary sanitation." In the act of March 1, 1933, supra, which is an amendatory act to enable the State Highway Department to effectually ‘carry out and put into effect the provisions of an amendment to the constitution therein referred to, it is provided as follows: "Be it further enacted by the authority aforesaid, that said political subdivisions be and they are hereby authorized to sell any of said certificates of indebtedness of said Highway Department for the purpose of paying any of said bonded indebtedness hereinbefore referred to, or of acquiring or retiring any of said outstanding bonds hereinbefore referred to, or for the purpose of investing the proceeds of the same in securities

now approved by law for the purpose of placing the same in the sinking-fund of said counties or highway districts hereinbefore referred to, and to sell and/or use any surplus thereof for any other proper and legal county purpose." This court is of the opinion that the purpose for which the money is to be raised by the sale of the certificates in question here, in view of that part of the constitution quoted above, is a lawful purpose within the purview of the amendatory statute of March 1, 1933. In *Townsend* v. *Smith*, 144 *Ga.* 792 (87 S. E. 1039), it was held: "The provision of the constitution of Georgia inhibiting the delegation by the legislature to any county of the right to levy a tax for any purpose except for those specified in art. 7, sec. 6, par. 2, among which purposes is that of providing for sanitation, is not offended by an act authorizing the appropriation of funds for carrying on and aiding in the work of the eradication of cattle-ticks and the suppression of contagious and infectious diseases of live stock. The expression, 'provide for necessary sanitation' is sufficiently comprehensive to authorize the raising and the expenditure of money for the purposes within the purview of the statute referred to." And in the opinion, in stating the reasons for the ruling just quoted, it was said that "the prevention of an infectious malady which, unless checked, would become general among the cattle of a given county, and thereby render the flesh of such cattle and the milk of cows diseased, unwholesome, and unfit for food, was a matter affecting the health of the people of the community where this disease appeared; and, this being true, that measures to eradicate the causes of the disease or to prevent its spreading could have been properly enacted by the legislature as a measure 'to provide for necessary sanitation.' No one would doubt for a moment that if the legislature were to prohibit the sale of diseased flesh of hogs or cattle, this would be a sanitary measure; and if it were necessary to expend money in carrying out and enforcing such sanitary measures, a tax levy to provide the money would be a tax providing for sanitation. We have several sections of our Code other than those taken from the act of 1909, relating to sanitary regulations, which embrace provisions for the inspection of slaughter-houses, meat and meat-food products, and provide a penalty for the violation of such regulations; clearly showing that the securing of wholesome and untainted meat is regarded as a matter coming under the head

of sanitation. It would be giving the term 'sanitation' too narrow a construction to hold that it did not embrace the subject dealt with in the statute under consideration. The legislature, at any rate, must have been of the opinion that this measure was embraced within that term as employed in the constitution; and the court will not say that their conclusion was not authorized by the facts which are of common knowledge."

And we are satisfied that the building of a hospital and the maintenance of the same for the purposes for which this hospital is intended falls within the reasoning of that case. It may be broader than the purposes in the tick-eradication measure; but it is equally related to the question of sanitation, because the sick convicts, and the poor who are sick and too poor to secure hospitalization otherwise, may spread the diseases with which they are afflicted, if they have no hospital to which they can go, and may spread the disease or malady with which they are afflicted to such an extent as to jeopardize the health of many citizens of the county. In view of this reasoning and what was said in *Townsend* v. *Smith,* supra, the purposes of the county commissioners were lawful.

*Judgment affirmed. All the Justices concur.*