Nohl v. Board of Education, 27 N. M. 232.

[No. 2611.   July 1, 1921.]

# NOHL v. BOARD OF EDUCATION OF CITY OF ALBUQUERQUE.

## SYLLABUS BY THE COURT.

1.   A court of equity will not sit in review of the proceedings of subordinate, political, or municipal tribunals; and, where matters are left to the discretion of such bodies, the exercise of that discretion, in good faith, is conclusive, and will not, in the absence of fraud, be disturbed.     P. 235

2.   Boards of education of municipal school districts (section 8, c. 105, Laws 1917) are given authority to defray "all other expenses connected with the proper conduct of the public schools in their respective districts."   **Held,** in a suit to enjoin the expenditure of school funds for the purpose of carrying group-insurance for teachers and employees, where the pleadings admit that by carrying such group insurance the school board is enabled to procure better teachers and to retain such teachers in its employ by so doing at a much less expense than would be necessary except upon the payment of much larger salaries, such an expenditure is connected with the proper conduct of the public schools, and within the discretion intrusted to the board of education.
P. 236

Appeal from District Court, Bernalillo County; Hickey, Judge.

Suit by Fred Nohl against the Board of Education of the City of Albuquerque for a injunction. Decree for defendant, and plaintiff appeals. Affirmed.

F. O. Westerfield, of Albuquerque, for appellant.

Simms & Botts, of Albuquerque, for appellee.

## OPINION OF THE COURT.

ROBERTS, C. J.   Appellant, a taxpayer of the city of Albuquerque, brought this action to enjoin the board of education of the city of Albuquerque from paying further installments of premium on a policy of group insurance upon the lives of the latter's teachers and other employees.   From the judgment and decree for the defendant, plaintiff appealed.

The cause was decided upon the pleadings, and there was no dispute as to the facts. The board of education of the city of Albuquerque had contracted with the Equitable Life Insurance Society to furnish group life insurance for the teachers and employees of the board of education under the terms of which the insurance continued in force during the year contracted for, if such employees remained in the employ of the board for such period, and was to be renewed annually, and upon the death of any of such employees the beneficiary named by such employee received from $500 to $2,000, depending upon the length of service of such employee with the board. Such insurance was payable to the employee in case of total and permanent disability. The monthly premiums paid for such insurance by the board varied in amounts from $70 to $90, depending upon the age and length of service of its employees for the time being. The funds were paid out of the public school funds of the municipal school district, and it was alleged in the complaint that the school district, unless enjoined, would continue the payment of such monthly premiums out of the public school funds aforesaid. The complaint alleged that such payment of the funds for such use constituted a misapplication and a misappropriation of the same to the irreparable damage of plaintiff and those similarly situated. The answer admitted the facts set forth in the complaint, but denied that the payment of the money constituted a misapplication of the funds or a misappropriation of the same, and further alleged:

"That defendant employs 110 teachers and 10 other employees in the conduct of the public schools in its district, and that the average monthly cost and expense of said insurance for each such teacher and employee does not exceed eighty-five cents for each such employee.

"That each of defendant's said teachers and other employees desires insurance upon his life, and that they cannot, by clubbing together, voluntary association, or otherwise

than through defendant as their employer and at defendant's expense, obtain insurance of the kind and character described in plaintiff's complaint, or insurance of equal value in proportion to cost; and many employees on account of family history, physical condition, and other obstacles could not obtain individual insurance, or any insurance other than in the form described in plaintiff's complaint.

"That the efficiency and usefulness to the public and to the schools of the teaching force is greatly increased by permanency and length of time of service of teachers, and that by incurring the small expense necessary to pay said insurance defendant has been able to secure and retain, and has secured and retained, the services of more efficient and loyal teachers and other employees, and has increased the efficiency and usefulness of its said employees to a much greater extent than would have been possible otherwise without expending much larger sums for higher salaries, and that thereby defendant has increased the efficiency, welfare and usefulness of the public schools under its jurisdiction and control at a minimum of expense to the taxpayers.

"That defendant, by its proper officers and directors, has decided and determined under all the facts and circumstances that the procuring and carrying of said insurance and the incurring of the expense thereof will increase, and has increased, the permanency, ability, efficiency, and loyalty of its teachers and other employees commensurate with the amount of expense, and that such expense is connected with the proper conduct of the public schools in its district.

"That the payment of further monthly premiums on said insurance policy by defendant will be defraying expenses connected with the proper conduct of the public schools in its district, and is such an expense as defendant is required and given power by law to defray, and that defendant's decision and determination thereof, in the exercise of the judgment and discretion of its officers and directors, should not be disturbed or interfered with by this court."

A stipulation was filed, as follows:

"(1)    That each and all of the allegations of plaintiff's complaint are true, except that defendant denies the correctness and soundness of the legal conclusions contained in paragraph 6 of said complaint, admitting, however, in event only that it should be finally determined that defendant is without authority of law to pay the insurance premiums complained of, that plaintiff is irreparably damaged and has no adequate remedy at law.

"(2) That each and all of the allegations of defendant's answer are true, except that plaintiff denies the correctness and soundness of the legal conclusions contained in paragraph 6 of said answer.

"(3) That the court may render judgment on the pleading and this stipulation for such party as in the court's opinion may be entitled thereto, and the parties hereto move the court to so do."

The single question for determination is whether the payment of money for the purpose stated was a misapplication or misappropriation of the school funds, and the solution of the question depends upon the statute. Section 8 of chapter 105, Laws 1917, which controls, reads as follows:

"County boards of education and boards of education of municipal districts shall have power and be required to provide, by building, purchasing, or leasing, suitable schoolhouses; to keep same in repair, to provide the necessary furniture therefor, to provide for fuel and light, for the payment of the teachers' wages as well as other employees, excepting only the county school superintendent; to provide for the payment of interest on school bonds and the redemption thereof, and to defray all other expenses connected with the proper conduct of the public schools in their respective district."

[1] Was the expenditure "connected with the proper conduct of the public schools?" It will be observed that the expenditure of the funds under this statute is left entirely in the discretion and judgment of the school board, so long as such expenditure can be reasonably said to be conducive to the proper conduct of the schools. In High on Injunctions, vol. 2, § 1240, the author says:

"A municipal corporation, being a political body clothed with certain legislative and discretionary powers, equity is ordinarily adverse to interfering by injunction with the exercise of those powers at the suit of a private citizen. And no principle of equity jurisprudence is better established than that courts of equity will not sit in review of the proceedings of subordinate political or municipal tribunals, and that where matters are left to the discretion of such bodies

the exercise of that discretion in good faith is conclusive, and will not, in the absence of fraud, be disturbed."

The text is abundantly supported by authority, and there are no cases to the contrary. The expenditure of public funds raised by taxation or other methods for public purposes must necessarily be intrusted by the Legislature to the public agencies, and these agencies are required · to exercise discretion and judgment in determining the purpose for which such money will be spent, within the limits of the authority granted, and courts will not interfere unless there is a clear departure from the legislative au-- thority. In the management and conduct of public schools of the state the· school authorities are called upon to determine the objects and purposes for which the school funds shall be expended, within the limits of the authority granted, which will prove beneficial to and promote the interests of education, and to expend money daily for such purposes.

[2] It is admitted that the securing of group insurance for the teachers enables the board of education to procure a better class of teachers, and prevents frequent changes in the teaching force. This is certainly desirable and conducive to the "proper conduct of the public schools." School funds are now being spent in all the school districts of the state, and in many, if not all of the other states, for purposes and objects unquestionably proper, gauged by our advancing civilization, which a quarter of a century ago would have been considered highly improper. In many of the schools we have mechanical instruction in many of the trades and professions which not so many years ago would not have been tolerated. The teaching· of music, arts, and science has become a recognized necessity. Many things are provided now for the comfort and convenience of both teachers and pupils which heretofore would have been prohibited by injunction as an improper expenditure of public

funds. In some of the schools of the state gymnasiums, swimming pools, playgrounds, and other forms of recreation, amusement, and diversion are provided, because it is recognized by advanced public sentiment that such instrumentalities are calculated to and do promote the cause of education, and tend to better the schools and keep the pupils and teachers satisfied and contented. Many corporations employing large numbers of laborers throughout the country carry group insurance on such employees with the same object in view as that which evidently was in the minds of the members of the board of education of the city of Albuquerque when the insurance in question was purchased. In many parts of the state we have consolidated schools, where conveyances are hired, or means of transportation provided, by which pupils living at long distances from the school are transported to and from the consolidated school. The power of boards of education to do so has never been questioned, because it is recognized that better schools are thus provided, and the cause of education is promoted.

It is clear that the courts should not interfere with the discretion intrusted to boards of education under the statute, unless it plainly appears that there has been a gross abuse of such discretion, and that the funds are being spent for purposes and objects which have no relation to the public schools. This cannot be said in this case. Some cases are cited by both parties, but, as they all depend upon the interpretation of statutes, they do not afford much assistance. Appellant cites the cases of Whittaker v. City of Salem, 216 Mass. 483, 104 N. E. 359, Ann. Cas. 1915B, 794; Shanklin v. Boyd, 146 Ky. 460, 142 S. W. 1041, 38 L. R. A. (N. S.) 710; Jennison v. Rogers, 87 Minn. 130, 91 N. W. 430, 58 L. R. A. 663; Smith v. Halvotchiner, 101 Neb. 248, 162 N. W. 630, L. R. A. 1917E, 331. And appellee cites the cases of District of Columbia v. Dean,

38 App. D. C. 182, 38 L. R. A. (N. S.) 513. But, as stated, these cases were all decided under local statutes, and are influenced more or less by the same.

For the reasons stated, we conclude that the expenditure was proper, and the judgment of the trial court will be affirmed; and it is so ordered.

RAYNOLDS, J., concurs.

PARKER, J., being absent, did not participate.