## FLOYD COUNTY *v.* SCOGGINS.

1. So much of the workmen's compensation act as requires the counties of this State to insure their employees against, or pay them compensation for, personal injuries or for their deaths while in the employment of the counties, violates art. 7, sec. 6, par. 2, of the constitution of this State, which declares the purposes for which the legislature can authorize the counties to levy taxes.
2. The above ruling renders it unnecessary to consider the other ground of attack upon the constitutionality of the above provision of the workmen's compensation act.

No. 5785. JULY 14, 1927.

Appeal. Before Judge Maddox. Floyd superior court. December 11, 1926.

*Denny & Wright,* for plaintiff in error.

*Porter & Mebane,* contra. *Little, Powell, Smith & Goldstein,* for persons at interest, not parties of record.

HINES, J. By the workmen's compensation act the counties of this State are required to pay compensation for personal injuries to, or death of, its employees, arising out of and in the course of their employment. Acts 1920, p. 169; 9 Park's Code Supp. 1922, § 3154(a) et seq. The validity of this act, so far as it relates to counties, is attacked upon the grounds: (a) that it violates art. 7, sec. 6, par. 2, of the constitution of this State, which declares that "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose," except those therein specified; and (b) that it violates art. 7, sec. 16, par. 1, which declares that "The General Assembly shall not, by vote, resolution, or

Appeal and Error, 4 C. J. p. 649, n. 36; p. 650, n. 37; p. 652, n. 58.
Constitutional Law, 12 C. J. p. 795, n. 27, 33; p. 797, n. 37.
Counties, 15 C. J. p. 633, n. 40; p. 635, n. 85 New.
Workmen's Compensation Acts, C. J. p. 49, n. 52 New.

order, grant any donation or gratuity in favor of any person, corporation, or association." Civil Code (1910), §§ 6562, 6573.

1. We deal with these grounds of attack in the order named. Before this court would be justified in declaring this act unconstitutional, so far as it relates to counties, the repugnancy between the statute and the constitution must be clear and palpable. In case of doubt, the constitutionality of the act must be upheld. *Wright v. Hirsch,* 155 *Ga.* 229 (116 S. E. 795). With this cardinal rule of construction for our guidance, how does the first attack upon the constitutionality of this act stand? By the paragraph of the constitution first cited, "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers and pay debts heretofore existing; to pay the county police; and to provide for necessary sanitation, and for the collection and preservation of records of birth, death, disease and health." Acts Ex. Sess. 1926, p. 30, amending § 6562. It is contended that the power of a county to levy a tax to pay for injuries to, or death of, its employees under this act, is derived from the provision authorizing the General Assembly to grant power to counties to levy a tax "to build and repair the public buildings and bridges." It is insisted that the proposition of law embraced in this contention is supported both by the previous decisions of this court, and by sound logic and good reason. We will first deal with the decisions relied upon to support this contention. In *Dearing* v. *Shepherd,* 78 *Ga.* 28, this court held that the provision which we now have under consideration, empowering the legislature to grant to a county authority to levy a tax to build and repair bridges, conferred upon the county the power to raise money by taxation to pay a judgment arising from injuries caused by the neglect of the county to keep a bridge in repair. Counsel for the defendant in error rely upon the decision in that case to support their contention that the power granted to the legislature to authorize counties to levy a tax "to build and repair the public buildings and bridges" includes the power to authorize the county to levy a tax to pay compensation for injuries to, or death of, county employees. There is some connection, though not close, between

the expenditure of money to repair public bridges and the payment of damages arising from the failure of counties to discharge the duty imposed on them to keep such bridges in repair. It is the substitution and application of county funds which should have gone into the repairs of public bridges to the payment of damages arising from the failure to make such repairs. We think this decision went as far as this court should go in construing this constitutional provision, and in holding that the power of the legislature to authorize counties to levy taxes to build and repair public bridges included the power to authorize them to pay damages to persons injured by their failure to discharge the public duty resting upon them to keep such bridges in repair.

In *Smith* v. *Floyd County,* 85 *Ga.* 420 (11 S. E. 850), this court held that the language, "to build and repair public bridges," broadened the taxing power which the legislature may confer upon counties sufficiently to embrace all expenses for constructing and maintaining bridges. In that case this court held that taxes could be levied for the purpose of paying damages done to private property in constructing approaches to a county bridge. There the relation between the language, "to build and repair public bridges," and the purposes to which county funds could be applied, was immediate and direct. In *Townsend* v. *Smith,* 144 *Ga.* 792 (87 S. E. 1039), this court ruled that the constitution did not inhibit the delegation by the legislature to any county of the right to levy a tax for tick eradication; and the decision in that case was based upon the language which provides "for necessary sanitation." The purpose of tick eradication is to render cattle and other animals immune to contagious and infectious diseases due to tick infestation, and thus to render the meats of such animals wholesome for human food. Here the relation between the language, "for necessary sanitation," and the application of county funds derived from taxation, is clear and unequivocal. In *Pennington* v. *Gammon,* 67 *Ga.* 456, this court held that the constitutional grant of power to tax "to maintain and support prisoners" included the power to organize a chain-gang. This was a method of maintaining and supporting prisoners. In these cases and in others which might be cited, the application of the county funds bore some clear and reasonable relation to one of the purposes for which taxes could be levied under this provision of the constitution. But it is insisted

by counsel who, as amici curiæ, have filed briefs, that the case at bar presents that of an employee engaged in repairing the county jail, which is a public building used "in the maintenance and support of prisoners," by putting in window screens, which is an act of sanitation, and that as the constitutional provision confers power on the legislature to authorize counties to levy a tax for repairing public buildings, for the maintenance and support of prisoners, and for necessary sanitation, this provision includes the power of the General Assembly to authorize the county to levy a tax to pay compensation for injuries to, and for the death of, its employees. Non sequitur. The power to build and repair public buildings and bridges, to maintain and support prisoners, and to maintain necessary sanitation, confers the authority upon counties to use such means and to do such things as are usually and ordinarily done to accomplish these objects; but it does not confer upon them the authority to expend the county funds for purposes wholly disconnected with the accomplishment of these purposes, although such expenditure of public funds might indirectly and remotely contribute to the accomplishment of the object for which such funds can be expended under the constitution. We do not think that under the power conferred by this provision the legislature can authorize counties to levy taxes to compensate employees for injuries received by them, or to provide benefits for those dependent upon them in case of their death, although provisions for these purposes might render the employees more efficient, and thus indirectly benefit the employer. If the counties can be required by the State to furnish liability insurance to their employees, upon the theory that it makes them more efficient, under this provision of the constitution, we do not see why the counties can not be made to do many other things which will equally contribute to the welfare and efficiency of the employees. Nutritious food, proper clothing, suitable dwellings, and proper medical attention, all add to the efficiency of employees; and if the county can levy taxes to provide compensation for injuries sustained by employees, or to compensate their dependents for their death, because the doing of these things makes the employees more efficient, we see no reason why the legislature, under this construction of the constitution, could not authorize a county to levy taxes for any of the purposes above suggested, and for many other purposes which could be mentioned.

The words, "to build and repair public buildings and bridges; to maintain and support prisoners; . . and to provide for necessary sanitation," are not to be enlarged by construction, but they are to receive the usual and common construction placed on them at the time they were inserted in the constitution. *Adair* v. *Ellis,* 83 *Ga.* 464, 467 (10 S. E. 117). We do not believe that the framers of the constitution intended that this provision of that instrument should receive a construction so comprehensive as to authorize the legislature to impose upon a county the doing of such things as an enlightened public policy would authorize in the treatment of county employees. The relation between building and repairing public bridges, and the creation of a system of workmen's compensation, is so remote and contingent as not to bear a reasonable relation to each other; and we do not believe that the framers of the constitution, when they inserted this language, intended that it should embrace the power in the legislature to impose upon the counties such a system. The connection between the language, "to maintain and support prisoners," and the provision for compensation of employees who are hurt or killed while working on a county jail, is so remote that the makers of the constitution, in inserting the quoted language in this provision, had no intention of so broadening the taxing power as to authorize counties to furnish such compensation. The language, "for necessary sanitation," and the provision for compensation to workmen who happen to be hurt in putting in screens in the windows of the jail, to protect the health of its inmates, are so far apart that we can not stretch the construction of such language so as to make it embrace a system of compensation for workmen so hurt. We fully agree with learned counsel that the performance of labor involves more to an employee than the expenditure of so much brawn and brain energy. It involves the risk of being injured or killed. The legislature, under the police power, can require ordinary employers to provide compensation for or insurance against such injuries. The same enlightened public policy might require that the counties should provide similar compensation for such injuries, or provide insurance against the same; and that the constitution of this State should provide therefor. But under our State constitution, counties can only expend county funds for the purposes enumerated in this provision of the constitution. "While a large discretion in the expenditure of

public money is necessarily vested in the officers of the county who have charge of its affairs, such discretion does not extend to the appropriation of public moneys beyond the specified purposes enumerated in the constitution." *Humber* v. *Dixon,* 147 *Ga.* 480 (94 S. E. 565). Not only is this so, but the legislature can not authorize the counties to expend public money for other purposes than those enumerated in this provision of the constitution. *Smith* v. *Baker County,* 142 *Ga.* 168 (82 S. E. 557). This case is controlled by the decision in *Smith* v. *State,* 160 *Ga.* 857 (129 S. E. 542).

So we are of the opinion that so much of the workmen's compensation act as relates to the counties of this State violates art. 7, sec. 6, par. 2, of the constitution, and that for this reason the court below erred in overruling the appeal of the county and in affirming the judgment of the industrial commission.

2. This renders it unnecessary to pass upon the other ground of attack upon the constitutionality of this act.

*Judgment reversed. All the Justices concur, except Russell, C. J., who dissents.*