## KRONCKE v. CADDO PARISH SCHOOL BOARD.

### No. 5709.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1938.

Rehearing Denied July 15, 1938.

Writ of Certiorari and Review Denied Aug. 5, 1938.

James U. Galloway, of Shreveport, for appellant.

J. B. Crow, of Shreveport, for appellee.

DREW, Judge.

Plaintiff instituted this suit against the Caddo Parish School Board under the provisions of the Employers' Liability Act (No. 20 of 1914 of Louisiana). He alleged that he was employed as a painter by defendant to paint certain school buildings in Caddo Parish; that while performing the services for which he was employed, a scaffold broke, causing him to fall to the ground a distance of 12 or 15 feet; that he sustained injuries which have incapacitated him for life for doing manual labor of a reasonable character. Plaintiff prayed for judgment for 65% of his weekly wage for a period not to exceed 400 weeks, less a credit of $300 paid to him by defendant on January 25, 1937.

Defendant excepted to plaintiff's petition for the alleged reason that it did not disclose a cause or right of action. The exceptions were overruled by the lower court and defendant answered, admitting plaintiff's employment; that he was injured in the course thereof, as he alleged; admitting his wage was $4 per day; and that it had paid him $300 through a desire to assist him. It further alleged that plaintiff's injuries had healed; that he was no longer permanently disabled, and prayed that his demands be rejected at his cost.

The case was tried below on January 6, 1938. On February 11, 1938, before judgment was rendered below, the defendant filed the following plea of unconstitutionality of Act 20 of 1914, as amended, particularly with reference to Sub-section 1 of Section 1 of said Act:

"Now into court, through the undersigned counsel, comes Caddo Parish School Board, defendant in the above numbered and entitled cause, and specially pleads the unconstitutionality of Act 20 of 1914 Louisiana Legislature, as amended, known as the Employers' Liability Act of Louisiana, on the grounds hereinafter set forth.

"1. That said Act 20 of 1914, as amended, insofar as it covers and affects parish school boards of the State of Louisiana and your defendant, Caddo Parish School Board, is unconstitutional, null and void, because,—

"(a) It violates Section 2 of Article 1 of the Constitution of the State of Louisiana in that it amounts to a taking of private property for others than a public purpose;

"(b) It violates Section 8 of Article 4 of the Constitution of the State of Louisiana in that it authorizes and requires an appropriation from the State Treasury for private purposes and to private persons;

"(c) It violates Section 9 of Article 4 of the Constitution of the State of Louisiana in that it authorizes and requires inclusion in the General Appropriation Bill of the State of Louisiana appropriations not authorized to be included therein;

"(d) It violates Section 12 of Article 4 of the Constitution of the State of Louisiana in that it authorizes and requires the granting of the credit, property and things of value of the State of Louisiana and of a political corporation thereof to private persons;

"(e) It violates Section 1 of Article 10 of the Constitution of the State of Louisiana in that it authorizes and requires the levying of taxes for other than public purposes;

"(f) It violates Section 5 of Article 10 of the Constitution of the State of Louisiana in that it authorizes and requires the exercise of the power of taxation by parochial corporations and public boards of the State of Louisiana, of which your defendant is one, for purposes not strictly public in their nature.

"(g) It violates Section 14 of Article 12 of the Constitution of the State of Louisiana in that it authorizes and requires the expenditure of State school funds for purposes other than the support of the public common schools of elementary and second grades as defined by Sections 1 and 2 of Article 12 of the Constitution.

"(h) It violates Section 15 of Article 12 of the Constitution of the State of Louisiana in that it authorizes and requires the expenditures of parish school funds for purposes other than the support and current operation of public elementary and secondary schools as defined in Sections 1 and 2 of Article 12 of the Constitution.

"Wherefore, premises considered, defendant prays that this special plea of unconstitutionality be sustained and that Act 20 of 1914 Louisiana Legislature, as amended, known as the Employers' Liability Act of Louisiana be declared unconstitutional, null and void, insofar as same covers and affects parish school boards and your defendant, and that, accordingly, this suit be dismissed at plaintiff's cost."

The lower court in a written opinion overruled the plea of unconstitutionality and rendered judgment for plaintiff in the amount sued for. Defendant has perfected this appeal.

There is no serious contest over the amount due plaintiff, if any is due him, or over the fact that he is totally and permanently disabled. The testimony conclusively shows that if he is entitled to sue, he is entitled to an award of the full amount prayed for.

In this court defendant seriously urges the two legal defenses pressed below.

The exception of no cause or right of action was correctly overruled by the lower court. Sub-section 1 of Section 1 of Act 20 of 1914, definitely provides that any person in the employ of the State or any incorporated public board, etc., has a right to sue such board for compensation. In the case of Charity Hospital of Louisiana v. Board of School Directors of St. Martin Parish, 146 So. 487, the First Circuit Court of Appeal, in interpreting said Sub-section, held as follows (page 488):

"Further consideration of the provisions of the act convinces us that we were wrong and that under paragraph 1 of section 1, persons in the service of the state or parish or other political subdivision or incorporated public board are entitled to recover compensation regardless of the nature or character of the business, trade, or occupation of the particular board or body for which they are performing service. Moreover, it is provided in the same paragraph that for such employee and employer, the payment of compensation shall be 'exclusive, compulsory and obligatory' according to the terms, conditions, and provisions of the act thereinafter set out. It seems clear that this last phrase relates to the basis on which the amount of compensation will be computed, the manner in which it shall be paid, etc., and not to the nature of the employer's business.

"It is only that class of persons who perform services for private individuals or corporations, as distinguished from those who work for the state or any of its agencies, whose rights depend on the nature or character of their employer's business, trade, or occupation which must be hazardous. This class comes under paragraph 2 of section 1 of the act under which such various trades and businesses are enumerated."

A writ of review was applied for in that case and refused by the Supreme Court. Since only the one question was involved, we take it that our Supreme Court has stamped its approval on the decision and we hesitate, therefore, to take a different view. However, in the case of Hall v. City of Shreveport, 157 La. 589, 102 So. 680, the Supreme Court, in interpreting the right of a compensation claimant against a municipality under Sub-section 1 of Section 1, Act 20 of 1914, said (page 682):

"Where a municipality in its private character is engaged in business enterprises for profit, as electric lights or water works plants or in operating street car lines, many reasons might be suggested for including within the provisions of the Compensation Law the workmen engaged in such hazardous employments. In such cases the municipality, like an individual engaged in trade or business, could place the burden of the added cost of service upon the public at large.

"But the same reasons would not apply where a municipality is acting in its public character, exercising merely its governmental functions, and those who are employed for such purposes, no matter how hazardous be their work, cannot be brought within the scope or purpose of the statute."

That decision was rendered by a divided Court, the Chief Justice and two other Justices dissenting. Furthermore, that part of the opinion quoted above was not necessary to a decision of the case, since it was determined by holding that a policeman who was the claimant therein was an appointive officer and falls within the exception of Sub-section 1 of Section 1 of said Act, and was not entitled to claim compensation.

We are aware of the fact that as a general rule the refusal of a writ by the Supreme Court does not make the case a Supreme Court decision, yet when the only question involved is a legal one, concerning the interpretaton of an act of the Legislature, as was the case in Charity Hospital of Louisiana v. Board of School Directors of St. Martin Parish, supra, we are

forced to the conclusion that the Supreme Court, in refusing the writ, has placed its approval on the case. The Supreme Court decision above referred to was decided in 1925 and the Court of Appeal case referred to was decided in 1933.

Defendant contends that the School Board exercises only governmental functions and therefore could not be mulcted in damages for a tort, under Article 2315 of the Revised Civil Code, citing in support thereof, Horton v. Bienville Parish School Board, 4 La.App. 123; 24 R.C.L. §§ 7 and 60; Sherman v. Parish of Vermillion, 51 La.Ann. 880, 25 So. 538; Hall v. City of Shreveport, supra; and that this court has said in Festervand v. Laster, 15 La.App. 159, 130 So. 634, 637: "The Employers Liability Act of Louisiana was intended as a substitute for the defective and insufficient remedy theretofore existing for the adjustment of claims of employees or their dependents against employers for injury or death of employees by accident in the course of their employment."

Our exact language from which the above quotation was taken is as follows (page 636): "The Workmen's Compensation Act should be liberally construed in favor of its beneficiaries, and, so construing it, we cannot limit the exemption from seizure of its benefits to those of its beneficiaries who reside in the state of Louisiana. It is a humane law, founded on public policy, and the result of thoughtful, painstaking and humane consideration. It was intended as a substitute for the defective and insufficient remedy theretofore existing for the adjustment of claims of employees or their dependents against employers for injury to or death of employees by accident in the course of their employment, and as a means whereby compensation might be had for every accidental injury or death coming within the provisions of the act, and the injured employee or his dependents in case of his death be protected against the delays and the extravagant attorney's fees incident to the former remedy, and as a method whereby he or they might receive regulated compensation, payable at stated periods, so as most effectually to carry out the purposes of the act, which are to provide the injured employee, or his dependents in case of death, with payments periodically over a fixed space of time with which to meet his or their continuing necessities. We can readily see that the public policy and humane thought

behind the act are well defined. It is well known that laboring men travel from place to place in the course of their work, or in search of work, and, if the Legislature had intended the exemption to apply only to such beneficiaries of the act as were residents of the state of Louisiana, it would have said so."

■ We have not changed our minds as to the correctness of the above statement, but nowhere in it do we say that the Employers' Liability Act is governed by the same rules of law as Article 2315. To the contrary, we consumed much time and space in an attempt to show the difference between the two actions, as well as the difference in the judgments. It most certainly is not so governed or interpreted. Article 2315 deals exclusively with torts, and at no time has a claim for compensation ever been defined as a tort action. The theory underlying the Workmen's Compensation statute, as set forth in Western Metal Supply Company v. Pillsbury, 172 Cal. 407, 156 P. 491, Ann.Cas.1917E, 390; 12 A.L.R. 1207, note, is as follows (page 495): "If it may reasonably be thought that the best interests of the state, of the employers of labor, and of those employed, as well as of the public generally, are prompted by imposing upon the industry or the public the burden of industrial accident—and some such theory lies at the bottom of all workmen's compensation statutes."

We quoted this paragraph in Festervand v. Laster, supra.

In the case of Hall v. City of Shreveport, supra, the court quoted from McRoberts v. Zinc Company, 93 Kan. 364, 144 P. 247, as follows: " 'In the enactment of the compensation law the Legislature recognized that the common law remedies for injuries sustained in certain hazardous industries were inadequate, unscientific, and unjust, and therefore a substitute was provided by which a more equitable adjustment of such loss could be made under a system which was intended largely to eliminate controversies and litigation, and place the burden of accidental injuries incident to such employment upon the industries themselves, or rather upon the consumers of the products of such industries.' "

■ We therefore conclude that the rules of law applicable to tort actions do not apply in compensation cases and that an employee of a school board has a right

and cause of action against it for compensation, if injured while in its employ, and, under the authority above cited, it is immaterial whether or not the functions of the school board are entirely governmental or not, nor does it matter whether its business is hazardous or non-hazardous.

Defendant contends that its plea of unconstitutionality should be sustained because (1), the funds under the control of parish school boards are public funds and can only be expended for public purposes; and (2) school funds are especially dedicated to a special purpose and can not be diverted.

In support of its contention, defendant cites and quotes freely from the case of Floyd County v. Scoggins, 164 Ga. 485, 139 S.E. 11, 53 A.L.R. 1286. Counsel in his brief states he has been unable to find any case in Louisiana on the issue raised. The Scoggins Case clearly supports defendant's contention, but the annotations following the decision in 53 A.L.R. 1290, clearly show the rule laid down therein is contrary to the majority rule.

The objection that applying the compensation act to public employees amounts to a diversion of public funds to a private use has been overruled in School Dist. v. Industrial Commission (1919) 66 Colo. 580, 185 P. 348, infra, IV; Wood v. Detroit (1915) 188 Mich. 547, 155 N.W. 592, L.R.A.1916C, 388, infra, III; Lewis & Clark County v. Industrial Accident Board (1926) 52 Mont. 6, 155 P. 268, L.R.A. 1916D, 628; Nevada Industrial Commission v. Washoe County (1918) 41 Nev. 437, 171 P. 511, infra, III; Porter v. Hopkins (1914) 91 Ohio St. 74, 109 N.E. 629, 9 N.C.C.A. 839; Borgnis v. Falk Company (1911) 147 Wis. 327, 133 N.W. 209, 37 L.R.A. (N.S.) 489, 3 N.C.C.A. 649; and Milwaukee v. Industrial Commission (1924), 185 Wis. 307, 201 N.W. 251.

Thus in Borgnis v. Falk Co. (1911), supra, where it was contended that the act compelled municipalities to levy taxes for other than public purposes, since all workmen injured in the employ of the public were to be compensated, and thus taxpayers would be deprived of their property without due process of law, the court said (page 220):

"The manner in which the state or the public shall treat its workmen is peculiarly a matter for the Legislature to determine. No one is compelled to work for the public, and, if he does, he takes his situation on the terms which the public gives. We know of no reason why the public, acting by its lawmaking power, may not provide that its employes shall have as part of their compensation certain indemnities in case of accidental injury in the public service. When a law does so provide, the raising of the funds to discharge those indemnities becomes plainly a proper public purpose."

Answering the second contention made by defendant, we find in 53 A.L.R. 1292, the following:

"Answering the objection that the act contravened the Constitution by diverting public funds from the purpose for which they were levied and collected, the court in Porter v. Hopkins (1914) 91 Ohio St. 74, 109 N.E. 629, said that the act fixed a certain charge or debt which was to be paid by the several subdivisions of the state, the amount of which was to be deducted from the taxes before they were distributed by the proper ministerial officers; and that the fact that the amount raised did not meet the exact requirements from time to time, and that some inconvenience might arise, did not affect the validity of the statute.

"The fact that the Legislature had determined that the money to be contributed by a county to the fund for the relief of its injured employees was to be devoted to a public purpose, and that it was an ordinary and necessary county expense, was stressed in Lewis & Clark County v. Industrial Accident Board (1916) 52 Mont. 6, 155 P. 268, L.R.A.1916D, 628, holding that the constitutional provision that taxes should be collected for public purposes only was not violated. The court said:

" 'If the compensation to be paid to an employee injured in the service of the county is to be treated as charity under an assumed name, then it might be conceded that this measure conflicts with the provisions of § 1, art. 13, of the Constitution; but that is not the conception of compensation statutes.'

"The objection, in connection with an award of compensation to a dependent of a city employee, that an award for a death not resulting from any injury sustained under the employment was the taking of money for a private use, was overruled in Milwaukee v. Industrial Commission (1924) 185 Wis. 307, 201 N.W. 251, upon the ground that the award was no

more than a necessary disposition of a balance due to the injured employee himself at the time of his death."

 It is our opinion, as has often been stated, that the underlying theory and intention of compensation statutes is to shift the burden of accidental injuries incident to employment from the injured employee onto the public through the employer. The raising of funds for such purposes, when the law has provided none, becomes plainly a public purpose.

We therefore conclude that the plea of unconstitutionality was correctly overruled by the lower court.

The judgment of the lower court is therefore affirmed, with costs.