POLK COUNTY, GEORGIA, Appellant,

v.

LINCOLN NATIONAL LIFE INSUR-
ANCE COMPANY, Appellee.

No. 17234.

United States Court of Appeals
Fifth Circuit.

Jan. 13, 1959.

Marson G. Dunaway, Jr., Rockmart, Ga., Glenn T. York, Jr., Cedartown, Ga., for appellant.

W. Colquitt Carter, Atlanta, Ga., Henry A. Stewart, Sr., Cedartown, Ga., Bryan, Carter, Ansley & Smith, Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellant, Polk County, Georgia, is a body corporate. Ga.Const. Art. XI, Sec. I, Par. I. In 1952 the County, acting through its Board of Commissioners of Roads and Revenues, applied to the ap-

pellee insurance company for life insurance and health, accident, sickness and hospital insurance for employees of the County. Pursuant to the applications insurance policies were issued under a contributory plan providing for a part of the premiums to be paid by the County and the remainder of the premiums to be paid by the insured employees through wage deductions. The compensation of a few of the employees of the County was fixed by the Legislature, but for the most part the amounts of employees' pay were fixed by the Board of Commissioners. In 1957 the Board of Commissioners cancelled the policies. The County asserted that the Board of Commissioners was without power to use County funds for the payment of a part of the premiums on the policies insuring County employees. It claimed that it was entitled to have the insurance company repay to it the amount of its contribution to the premiums paid. The validity of this claim was submitted to the district court for the Northern District of Georgia and it resolved the question in favor of the insurance company. From the district court's judgment the County has appealed.

■ The Board of Commissioners issued a fi. fa. or execution against the insurance company at a meeting of which the insurance company had no notice and was not represented. The County claims a prima facie validity for this ex parte self serving action. We do not think it is entitled to any presumption of validity. The right of the County to recover, if it had no power to contribute to the payment of premiums, is not questioned.

The primary reliance of the County is upon the doctrine announced in Floyd County v. Scoggins, 164 Ga. 485, 139 S.E. 11, 53 A.L.R. 1286. By this case, decided in 1927, the Supreme Court of Georgia held invalid so much of the Workmen's Compensation Act of Georgia as required counties to pay compensation for personal injuries to, or death of, its employees, arising out of and in the course of their employment. The Georgia Constitution contained restrictions upon the power of counties to levy taxes in these words:

"The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers and pay debts heretofore existing; to pay the county police, and to provide for necessary sanitation, and for the collection and preservation of records of births, death, disease and health." Ga.Const.1877, Art. VII, Sec. VI, Par. II, as amended Acts 1908, p. 33, Acts. 1910, p. 45, Acts 1926, Extra Sess., p. 30.

The Georgia Workmen's Compensation Act, as passed in 1920, defined "Employer" as including "any municipal corporation within the State, and any political division thereof." Ga.Acts 1920, p. 167, Ga.Code Ann. § 114–101. The statute also provided that:

"Neither any municipal corporation within the State, nor any political subdivision of the State, nor any employee of any such corporation or subdivision, shall have the right to reject the provisions of this Title relative to payment and acceptance of compensation * * *." Ga.Acts 1920 p. 175; Ga.Code Ann. § 114–109.

After making references to the provisions of the statute before it for construction, the Supreme Court of Georgia stated the reasons for its decision. It said:

"We do not think that under the power conferred by this provision the Legislature can authorize counties to levy taxes to compensate employees for injuries received by them, or to provide benefits for those dependent upon them in case of their death, although provisions for these purposes might render the employees more efficient, and thus indirectly

benefit the employer. If the counties can be required by the state to furnish liability insurance to their employees, upon the theory that it makes them more efficient, under this provision of the Constitution, we do not see why the counties cannot be made to do many other things which will equally contribute to the welfare and efficiency of its employees. Nutritious food, proper clothing, suitable dwellings, and proper medical attention, all add to the efficiency of employees; and if the county can levy taxes to provide compensation for injuries sustained by employees, or to compensate their dependents for their death, because the doing of these things makes the employees more efficient, we see no reason why the Legislature, under this construction of the Constitution, could not authorize a county to levy taxes for any of the purposes above suggested, and for many other purposes which could be mentioned. * * *

"We do not believe that the framers of the Constitution intended that this provision of that instrument should receive a construction so comprehensive as to authorize the Legislature to impose upon a county the doing of such things as an enlightened public policy would authorize in the treatment of county employees. * * * We fully agree with learned counsel that the performance of labor involves more to an employee than the expenditure of so much brawn and brain energy. It involves the risk of being injured or killed. The Legislature, under the police power, can require ordinary employers to provide compensation for or insurance against such injuries. The same enlightened public policy might require that the counties should provide similar compensation for such injuries, or provide insurance against the same, and that the Constitution of this state should provide therefor. But under our state Constitution, counties can only expend county funds for the purposes enumerated in this provision of the Constitution". Floyd County v. Scoggins, supra, 139 S.E. 12–13.

The Supreme Court of Georgia has condensed the Scoggins rule and has thus stated it:

"It would be an unconstitutional expenditure of money by the board of education of Troup county to pay for personal injuries received by a bus driver under the circumstances herein stated, or for compensation insurance under the Workmen's Compensation Act." Murphy v. Constitution Indemnity Co., 172 Ga. 378, 157 S.E. 471.

The Scoggins case has been followed in Perdue v. Maryland Casualty Co., 43 Ga. App. 853, 160 S.E. 720; DeKalb County v. Grice, 51 Ga.App. 887, 181 S.E. 703; Kelley v. Newton County, 198 Ga. 483, 32 S.E.2d 99; and in the recent case of Morgan County v. Craig, 213 Ga. 742, 101 S.E.2d 714. The doctrine was recognized in Commissioners of Roads Revenues of Fulton County v. Davis, 213 Ga. 792, 793, 102 S.E.2d 180; and see 15 Ga.Bar Journ. 499 and 6 Mercer Law Rev. 287, 318. It is generally held that political subdivisions may, in the absence of an express constitutional restriction, be made subject to workmen's compensation acts. 58 Am.Jur. 658, Workmen's Compensation § 121. Georgia, in 1945, by a revised Constitution, Art. VII, Sec. IV, Par. 1, Ga.Code Ann. § 2–5701(15), has provided that the state legislature may authorize counties to avail themselves of workmen's compensation coverage for their employees.

Workmen's compensation provides indemnity, to the extent of the coverage, against injuries or death arising out of and in the course of employment. The indemnity provided by the policies issued by the appellee provided, to the extent of the coverage, indemnity for accidental injuries or death whether or not connected with employment. The insurance policies provide, in the circumstances and

subject to the limitations prescribed, for sickness and hospital benefits. If a county of Georgia could not provide workmen's compensation indemnity for its employees, by insurance or as a self-insurer, against injuries and death resulting from the hazards of the employment, and it seems clear under the Scoggins and other decisions cited that it could not under the former Georgia Constitution, then it would seem to follow that a county could not, by insurance or otherwise, provide indemnity for county employees against injuries and death without regard to any causal relationship to the employment. This, however, Polk County attempted to do by the policies of insurance issued by the appellee. There are, in the portions of the Scoggins opinion quoted herein, statements by the Georgia court which clearly indicate that a county cannot provide medical care for employees nor compensate their dependents for their death. Yet the county attempted to do this by the insurance procured from the appellee.

The district court found and the appellee here asserts that the weight of authority is contrary to the conclusion we have reached. Decisions of courts of other jurisdictions are cited to sustain the proposition that counties may supplement the wages of employment by paying part of insurance premiums for employees. It is said that the county could obtain better employees, that employees would have a sense of security, that an injured employee would receive his wages from the insurance company and not from the county. These are, in substance, the arguments which were rejected by the Supreme Court of Georgia in the Scoggins case.

■ It is the law of Georgia that governs and, under the Conformity Act and Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, this Court is required to determine, as best it can, what that law is with respect to the undisputed facts of the case. In the Second Circuit, in an opinion where Judge Frank spoke for the court, it was said:

"Perhaps the guessing-guide is this: What would be the decision of reasonable intelligent lawyers, sitting as judges of the highest New York Court, and fully conversant with New York 'jurisprudence'? An alternative test is what we conjecture would be the decision of the particular judges who now constitute that court. Probably the presumption is that the result of the two tests would be identical; but happily we are relieved from the need of considering that question, because, knowing the sitting judges, we feel certain that such a presumption accords with the facts." Cooper v. American Airlines, 2 Cir., 1945, 149 F.2d 355, 359, 162 A.L.R. 318. Cf. Frank, Law and the Modern Mind, 148 et seq.

If the views so expressed are to prevail it would seem that the Federal Courts, in their search for a rule of state law, would be attempting to psychoanalyze state court judges rather than to rationalize state court decisions. Stating principles which we think are more generally prevailing and based upon better reasoning is the following:

"A decision of the state court must be on the precise point in controversy in the federal court in order to have binding effect as a precedent therein, but the federal court has the duty, where a direct expression by the state court is lacking, to have regard for any persuasive data available, such as compelling inferences or logical implications from other related adjudications. A state decision on a similar point is entitled to great respect, it may be followed as a reasonably satisfactory basis for a conclusion, and if analogous decisions clearly show the law of the state the federal court must determine the case in accord with those decisions.

"State decisions to be conclusive must clearly establish the rule to be followed, and the federal courts are not required to adopt a construction

of a state constitution or statute based on mere implication from the language of a judicial opinion." 35 C.J.S. Federal Courts § 176, p. 1260.

■ We read the Scoggins case as holding that the Georgia Constitution as of that time prohibited the counties of that state from providing for indemnity to employees for injuries or death arising out of and in the course of employment. The fact that the conditions and extent of the indemnity are to be measured under a workmen's compensation statute appear to be incidental and not of the ratio decidendi of the Scoggins case. We do not agree that the purposes for which the payments were made to the insurance company in this case are of a different nature than the purposes for which payments were made in the Scoggins case. Each involved fringe benefits to county employees and some of such benefits in this case are less related to employment than those in the Scoggins case. The question presented is not an entirely different question. We read Scoggins as being in point and as clearly establishing the rule which we are compelled to follow.

■ We are not permitted to overrule a decision of the Supreme Court of Georgia on any theory that the Georgia Supreme Court, as presently constituted, would not be bound by what it had said when differently constituted some years ago. Nor can we apply, in diversity cases, a rule of stare decisis which permits us to weigh the degree of authority belonging to a precedent by its agreement with the spirit of the times. The Georgia courts can overrule their prior decisions. The Federal Courts cannot do so. Moore v. Illinois Central Railroad Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. It is the duty of a Federal Court to ascertain what the state law is, not what it ought to be. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. To hold otherwise would be to return to the overthrown doctrine of Swift v. Tyson, 26 Pet. 1, 10 L.Ed. 865. Whether or not the Georgia Supreme Court of today would decide Scoggins as it was decided

cannot, of course, be determined. It can be said that the present court, in the recent case of Commissioners of Roads & Revenues of Fulton County v. Davis, supra, considered the Scoggins case and neither overruled it nor criticized it.

Contrasted with the Second Circuit's statement in Cooper v. American Airlines, supra, is the following from the Eighth Circuit:

"In the application of a state statute, the federal courts are, of course, bound by the construction made by the courts of the state. * * * And the obligation to accept local interpretation extends not merely to definitive decisions, but to considered dicta as well. * * * Indeed, under the implications of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, * * * it is the duty of the federal court, in dealing with matters of either common law or statute, to have regard for any persuasive data that is available, such as compelling inferences or logical implications from other related adjudications and considered pronouncements. The responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it. Any convincing manifestation of local law, having a clear root in judicial conscience and responsibility, whether resting in direct expression or obvious implication and inference, should accordingly be given appropriate heed." Yoder v. Nu-Enamel Corp., 8 Cir., 1941, 117 F.2d 488, 489.

To the same effect is Cold Metal Process Co. v. McLouth Steel Corporation, 6 Cir., 1942, 126 F.2d 185. And see West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956. In the Fifth Circuit the Yoder case has been cited with approval. New York Life Insurance Co. v. Schlatter, 5 Cir., 1953, 203 F.2d 184. In the case last cited this Court justified following a state court

pronouncement which was asserted to be a dictum, by this quotation from the Supreme Court:

"At least it is a considered dictum, and not comment merely *obiter*. It has capacity, though it be less than a decision, to tilt the balanced mind toward submission and agreement. * * * In controversies so purely local, little gain is to be derived from drawing nice distinctions between dicta and decisions. Disagreement with either, even though permissible, is at best a last resort, to be embraced with caution and reluctance. The stranger from afar, unacquainted with the local ways, permits himself to be guided by the best evidence available, the directions or the counsel of those who dwell upon the spot." Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 242, 77 L.Ed. 610.

Therefore, our decision is controlled by the Scoggins case, whether it be regarded as precisely in point or as furnishing compelling inferences and logical implications. Having concluded that the appellant, Polk County, should recover, we remand to the district court for the entry of an appropriate judgment.

Reversed and remanded.

HUTCHESON, Chief Judge, dissenting.

As I understand the decision of the majority, it does not hold that in Floyd County v. Scoggins, 164 Ga. 485, 139 S.E. 11, 53 A.L.R. 1286, from which it takes its shibboleth, its "Thou shalt not pass", the Supreme Court of Georgia had before it for decision or undertook to decide "the precise point in controversy" here and that, therefore, it has *"binding effect as a precedent therein,"* within the true meaning of *precedent* as pointed out in the majority opinion quoting from 35 C.J.S. Federal Courts § 176, p. 1260.

If, in the light of the undisputed facts of that case and of this, as they are clearly set out in the findings of fact and conclusions of law [1] of the district judge,

---

I. Findings of Fact:

"This case is pending in this court because of diversity of citizenship of the parties. The plaintiff is Polk County, Georgia, and the defendant The Lincoln National Life Insurance Company, a non-resident. Plaintiff seeks to recover from defendant company the sum of $14,210.-81, representing insurance premiums paid by plaintiff to defendant upon certain policies of insurance which were in effect from Aug. 28, 1952, until Mar. 18, 1957, for the benefit of employees of the plaintiff, representing life insurance and disability insurance.

"The insurance was issued upon a contributory basis, a part of the premiums being paid from deductions from salaries of employees and a part from county funds. Total gross premiums paid during said period were $25,671.50 part of which was refunded. During that period of time defendant company paid as benefits to employees the sum of $13,198.00. Alleging that 'the sum of $14,210.81 was an unauthorized expenditure of funds by the Board of Commissioners of Roads and Revenues of Polk County', their successors in office, the present Board, now seek to recover the same from defendant.

"There is no dispute concerning the contention of defendant that the foregoing sums were paid by the County Commissioners for the benefit of the employees of the county, *and there is no reason to doubt that the funds should be considered as additional wages or compensation to the latter.* As this Court is ruling plaintiff cannot recover, it will not be necessary to make any additional Findings of Fact, and the foregoing facts are agreed upon between the parties." (Emphasis supplied.)

Conclusions of Law:

"If plaintiff recovers in this case it must be upon its contention that the former Board of County Commissioners paid out funds of the county for such insurance premiums and such payments were made for a purpose not including the purposes for which county taxes may be levied under the laws of Georgia. In Georgia Code Sec. 92-3701 there is an enumeration of the purposes for which the county may levy taxes. No contention is made to the effect that the employees who would benefit by these premium payments were not engaged in furtherance of the purposes for which taxes could be levied by the county authorities.

"It may be assumed that if these premiums were paid illegally the county would have the right to recover them back, and it will be noted that the coun-

whose long and distinguished career in the Georgia State and Appellate Courts and as a United States Judge in Georgia furnishes for me, where the Georgia Appellate Courts have not spoken on the subject, "the best evidence available, the directions or the counsel of those who dwell upon the spot", Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610, they had so held, I should have contented myself with setting out the facts of both cases and simply drawing the deadly parallel.

If, on the other hand, the majority opinion, conceding that there were no binding precedents in favor of its view,

and that the question was open for decision, had held that the correct way to decide it as a case of first impression was to deny liability and permit the county to avoid payment for the insurance, the benefits of which it had received, thus welshing on its agreement, I should content myself with saying that the decision was neither morally nor legally right, and, in support, should point to the uniform course of authority to the contrary of its view. My brothers, however, take neither of these courses.

Flatly stating:

"The question presented is not an entirely different question. We

> ty is not now seeking to recover all of the premiums paid, but only the amount over and above the claims paid by defendant insurance company. Plaintiff is correct in stating that if a contract made is illegal and is beyond the powers of a county, however beneficial it may be, the public ought not to be estopped to deny its validity. 14 Am.Jur., 213 and 215. It is also true that 'counties possess no power to incur an obligation except as authority as given them by statute.' See Nolan v. Cobb County, 141 Ga. 385 [81 S.E. 124, 50 L.R.A.,N.S., 1223]; also Lynch v. Harris County, 188 Ga. 651 [4 S.E.2d 573].
>
> "On the other hand, the expenditures for premiums were legal if the purposes thereof 'bore some clear and reasonable relation to one of the purposes for which taxes could be levied.' See Floyd County v. Scoggins, 164 Ga. 485, at p[age] 487, [139 S.E. 11, 53 A.L.R. 1286]. Plaintiff relies strongly upon the case just cited to sustain its contention in this case, but there are several material distinctions between the case cited and the instant case. In the case cited the Court held to be invalid a Georgia statute requiring that counties furnish workmen's compensation insurance to its employees, and to pay for the same. The statute therein involved in effect placed the mandatory duty upon the county commissioners which involved a liability against the county which previously did not exist. The purposes for which the insurance premiums were paid which are herein sued for, however, are of a different nature and constitute additional compensation to the employees as wages and salary, the payment of which was left in the discretion of the county commissioners.

> "It would seem that the weight of authority both in Georgia and other states is to the effect that the county commissioners had the right to supplement the salary or wages of its employees by paying part of these insurance premiums for the employees, and that a number of beneficial results flowed to the county by so doing. The county would be able to obtain better employees, the employees would have a sense of security, the county employee when injured could be paid his wages by the insurance company and not by the county. These various factors are pointed out in the cases cited below, upholding the validity of such payments by counties, to-wit: Nohl v. Board of Education [of City of Albuquerque, 27 N.M. 232], 199 P. 373; Bowers v. City of Albuquerque [27 N.M. 291], 200 P. 421; State ex rel. Thompson v. City of Memphis [147 Tenn. 658], 251 S.W. 46 [27 A.L.R. 1257]; Lower Colorado River Authority v. Chemical Bank & Trust Co., [Tex.Civ.App.], 185 S.W.2d 461; People ex rel. Terbush & Powell, Inc. v. Dibble, [Sup.], 189 N.Y.S. 29 (is contrary to the foregoing).
>
> "That the county commissioners were acting within their discretion in taking out these insurance policies would seem to be supported by the Georgia Courts in the cases of: McCrory Co. of Georgia v. Board of Commissioners, 177 Ga. 242 [170 S.E. 18]; Spalding County v. [W.] Chamberlin & Co., 130 Ga. [649] 650 [61 S.E. 533]; Wright v. Floyd County, 1 Ga.App. 582 [58 S.E. 72].
>
> "Based upon the foregoing this court concludes that the sums of money sued for in this case were legally paid out by the County Commissioners of Polk County and cannot be recovered in this case, and judgment will be entered accordingly."

read Scoggins as being in point and as clearly establishing the rule which we are *compelled to follow.*" (Emphasis supplied.)

and by this dictum assuming the grounds on which their decision is to rest, the majority lay down the bridge over the chasm which, under the undisputed facts of the two cases and in the state of the law, it could not logically have crossed. It then proceeds to berate those who, like myself, cannot and will not follow this kind of question begging and, making broad its phylacteries, passes by on the other side.

My brothers correctly say, "It is the duty of a federal court to ascertain what the state law is and not what it ought to be." In reply to each of them, I say, as the prophet Nathan in effect said to David, "Out of thine own mouth art thou judged." All that I have ever asked or could justly ask of them is that, swallowing or confessing their pride of opinion in their power of divination and its inerrancy, which, by a kind of crystal ball gazing, enables them to prophesy on the basis of Scoggins as to what the Supreme Court of Georgia will do under an entirely different set of facts, is that they simply acknowledge: that Scoggins is a special, a peculiar, and a limited case; that in it the Georgia Supreme Court, resisting and rejecting, as the usurpation of authority, an act of the Legislature of Georgia, which *ordered and undertook to compel counties* to assume workmen's compensation liabilities, decided this and nothing else, for nothing else was before it for decision, that the legislature had exceeded its powers.

That this is the case is shown not only by the opinion in the Scoggins case but even more strongly and clearly in later cases which have cited and discussed it and given it its true and limited meaning and effect, particularly two cases, Kelley v. Newton County, 198 Ga. 483, 32 S.E. 2d 99, interpreting and applying it, and City of Atlanta v. Pickens, 176 Ga. 833, 169 S.E. 99, interpreting and distinguishing it.

The majority, in effect seeming to take the view that those who do not follow its view as to the way this case should be decided are in effect engaging in crystal gazing for the purpose of keeping up with, indeed getting ahead of the procession, a practice which in considered opinions I have not only eschewed but condemned, makes it appear that unwillingness to follow its lead in making the Scoggins case, like Moses' rod, swallow all the other cases decided and to be decided in Georgia with respect to the power of counties, makes us subject to the charge that in arriving at our decision as to state law, we "psychoanalyze state court judges instead of rationalizing state court decisions." With not too much deference to these views of my distinguished brothers, I say in reply, for myself and my assaulted brother, that it is not he and I, but they who have done and are doing this thing.

Flying in the face of the full quotation from 35 C.J.S., 1260, supra, which I wholeheartedly adopt, the majority then proceeds, I think, to substitute for the facts required to *make the Scoggins case a case on the precise point at issue* here, to spin a web of theory based on conjecture as to what the judges in the Scoggins case *were really trying to do, or had in their minds to do, or would have done* if the facts here had presented themselves there.

Finally, *citing in support of their view,* New York Life Insurance Co. v. Schlatter, 5 Cir., 203 F.2d 184, a decision in which the writer participated and which, with deference, I submit does not at all support its view, the majority, following the same line of reasoning followed throughout, a line strongly reminiscent of that the wolf in Aesop's Fables followed, when, concluding his argument with the lamb, he said, "Well, I am going to eat you anyway", come up with this conclusion:

"*Therefore,* our decision is controlled by the Scoggins case, whether it be regarded as precisely in point or as furnishing compelling infer-

494

ences and logical implications. Having concluded that the appellant, Polk County, should recover, we remand to the district court for the entry of an appropriate judgment" (emphasis supplied).

to which, replying, "Parturient montes et nascetur ridiculus mus", I dissent for the reasons and upon the authorities cited by the district judge.