SID MAYES v. THE STATE.

64  329<br>70  253<br>64  329<br>74  457

1. MURDER. *Evidence. Res gestœ. Case in judgment.*

At a social gathering at night, during which intoxicating liquors had been freely used, a fight occurred between A. and K. S interfered and A. received a wound from which he died. S. was indicted and put upon trial on a charge of having murdered A. The witnesses for the State testified that while A. and K. were fighting, S. ran in between them, threw his arm around A., and cut him across the stomach with a knife, inflicting the wound from which death resulted. The witnesses for the accused testified that he did not inflict any wound on A., but only separated him and K., and that K. gave the fatal blow. H., a witness for the State, testified to a statement made by A. under these circumstances: When A. was cut he immediately ran a distance of from one hundred to one hundred and ten yards (pursued a part of the way by S., who repeatedly snapped a pistol at him, but who turned back before A. ceased running) into some woods and lay down. H. walked in the direction in which A. had gone, and while thus going one L. called to him, saying: "Here is A. out in the woods with his guts cut out." Before getting to A., H., heard him and L. talking. H. reached A. in about five minutes after the wound had been given, and A. then said to him, "H., S. has cut my guts out; did you see him?" This statement of the deceased, as testified to by H., was objected to by the defendant, but was admitted in evidence by the

court, as a part of the *res gestæ. Held,* that such statement was not a part of the *res gestæ,* and was erroneously admitted in evidence.

2. Criminal Practice. *Evidence. Rule as to res gestæ.*

It is improper for a court to admit evidence of a statement as being a part of the *res gestæ* on the ground that such statement will throw light upon the transaction under investigation, or that it was made so soon after the occurrence as to exclude the presumption that it has been fabricated, or that it was made under such circumstances as to compel the conviction of its truth. But the true rule for the admission of such evidence is that the statement testified to is a verbal act, illustrating, explaining, or interpreting other parts of the transaction of which it is itself a part.

Appeal from the Circuit Court of La Fayette County.

Hon. W. S. Featherston, Judge.

The case is stated in the opinion of the court.

*W. V. Sullivan,* for the appellant.

The testimony of Henry Wortham should not have been admitted as part of *res gestæ,* because from his own statement it appears that the alleged conversation was some five minutes after the difficulty occurred, some distance away from the place, and after he (deceased) had been engaged in conversation with others.

*T. M. Miller,* Attorney General, for the State.

In answer to the assignment of error touching the testimony of Wortham, it will be sufficient to call attention to the reason given by the learned judge to the effect that the time was so short that the idea of a concocted story is entirely negatived. It was a statement in the nature of an exclamation—strictly *res gestæ.*

Cooper, C. J., delivered the opinion of the court.

The appellant has been convicted of the murder of one Albert Lester, and assigns many errors in the proceedings in the court below. We deem it unnecessary to consider the many assignments, many of which are without the semblance of merit, since the judgment must be reversed on the point hereinafter indicated.

The homicide occurred at a social meeting, which had been protracted through the night, during which time many of those present had indulged in the excessive use of intoxicating liquor, a number of fights resulted, and among these was one between the deceased

and one Kirkwood. According to the testimony of the witnesses for the State, it appears that while Kirkwood and deceased were fighting the appellant ran in between them, threw his arm around deceased, and cut him with a knife across the stomach, inflicting the wound from which death resulted. On the other hand, the testimony of other eye-witnesses who testified on behalf of the appellant is that he did not inflict any wound on deceased but only separated him and Kirkwood and that Kirkwood gave the mortal blow. The dying declaration of the deceased, made several days after the injury, was admitted in evidence, and by it it appears that the appellant was the guilty agent. But testimony tending to impeach the credibility of this dying declaration was introduced by the appellant. The court below, over the objections of the defendant, permitted a witness (Henry Wortham) to testify to a statement made by deceased under these circumstances. When deceased was cut he immediately turned and ran a distance of from one hundred to one hundred and ten yards (pursued a part of the way by the appellant, who repeatedly snapped a pistol at him but who turned back before deceased ceased running) and then turned into the woods and lay down. The witness, Wortham, walked up in the direction in which deceased had gone, and when he had gone a part of the distance he heard one Lynch call out to him, saying : "Here is Albert out in the woods with his guts cut out;" the witness then went to where deceased was lying, and before getting there he heard him and Lynch engaged in conversation. Witness reached deceased as nearly as he could fix the time in about five minutes after the wound had been given, and when he came up deceased said to him : "Henry, Sid (the appellant) has cut my guts out; did you see him?"

Upon objection to this testimony being made, the learned judge ruled that the statement of the injured party was so recently made after the wound had been given that it was a part of the *res gestæ*, saying that he did not think sufficient time had elapsed to warrant the suspicion of fabrication.

An examination of the approved text-writers, and of the decisions to which they refer, discloses, especially in the decisions of

American courts, a somewhat loose regard for well-recognized rules governing the admissibility of evidence. That hearsay testimony cannot be given is universally admitted by the courts which have from time to time been called upon to determine whether statements of this character are competent, and they have, without exception, declared that when the statement assumes the character of a narrative of a past transaction it is incompetent. But in many cases what were manifestly completed and finished acts have been by a sort of construction treated as incomplete and unfinished, and the statement thus held to be a verbal act incorporated with and a part of the thing being done.

In *Thompson and Wife* v. *Trevanion,* Skinner 402, Lord Chief Justice Holt " allowed what the wife said immediately upon the hurt received, and before she had the time to contrive or devise anything for her own advantage," to be given in evidence. In *The King* v. *Foster* the witness had seen a cab drive by at a very rapid rate, but did not see the accident, but " immediately after heard the deceased groan, and went to where he was lying." It was then proposed to show what the deceased then said as to the cause of his injury, and objection was made by the defendant, but the objection was overruled, the judges ruling that what he said at the instant, though after the injury, was competent. These two cases, as was pointed out by Mr. Justice Clifford in his dissenting opinion in *Insurance Company* v. *Mosely,* 8 Wallace 419, have been criticised by Mr. Roscoe as " difficult to reconcile with established principles." In *Insurance Company* v. *Mosely, supra,* statements of the deceased made several minutes after an injury which, it was alleged, had resulted in death, as to how he was injured, were admitted by a divided court. In *Commonwealth* v. *Pike,* 3 Cushing 181, the statement of the injured party made some time after the injury—exactly how long is not shown—was received. So also in *People* v. *Vernon,* 35 Cal. 49, and *Mitchum* v. *The State,* 11 Ga. 616.

On the other hand, in *Bedington's Case,* 14 Cox. Cr. Cas. 341, the injured party was seen coming out of a room with her throat cut, and, speaking to the first person she met, said, " See what

Bedington has done." It was proposed to give this statement in evidence against the defendant, but Cockburn, C. J., rejected it, holding that it was not a part of anything then being done, but was a mere statement of a past transaction. *Commonwealth* v. *Pike*, 3 Cushing, has been practically overruled by the subsequent cases of *Lund* v. *Tyngsborough*, 9 Cushing 36; *Chapin* v. *Marlborough*, 9 Gray 244, and *Commonwealth* v. *Denmore*, 12 Allen 535. So also *People* v. *Vernon*, 35 Cal., has been overruled in the later case of *People* v. *Ah Lee*, 60 Cal. 85.

The question of the admissibility of such statements was elaborately and ably discussed by Fletcher, J., in the case of *Lynd* v. *Tynsborough*, and by Clifford, J., in his dissenting opinion in *Insurance Co.* v. *Mosely*, 8 Wallace. We concur in the views there so clearly enunciated against the competency of such proof, which are in harmony with decisions in our own State. *Kendrick* v. *State*, 55 Miss. 436; *Kramer* v. *State*, 61 Miss. 151. It is not enough that the statement will throw light upon the transaction under investigation, nor that it was made so soon after the occurrence as to exclude the presumption that it has been fabricated, nor that it was made under such circumstances as, to compel the conviction of its truth; the true inquiry, according to all the authorities, is whether the declaration is a verbal act, illustrating, explaining, or interpreting other parts of the transaction of which it is itself a part, or is merely a history or a part of a history of a completed past affair. In the one case it is competent, in the other it is not. We are not to be understood as attempting to lay down any rule for the decision of what, under all circumstances, is the limit of the existence of the principal fact, which may be explained by contemporaneous declarations. In some cases the *res gestæ* may extend over weeks or months, in others they are limited to hours, or to minutes, or to seconds of time. Each case must be determined by its own particular circumstances. Mr. Wharton very well expresses the law on this subject, by contrasting the sudden affray between strangers with the social feud which gave rise to the Gordon riots in England. He says, " nor are there any limits of time within which the *res gestæ* can be arbitrarily confined. They vary in fact

with each particular case.   If in any one of our streets·there is an unexpected collision between two men, entire strangers to each other, then the *res gestœ* of the collision are confined to within the few moments that it occupied.   But when there is a social feud, in which two religious factions, as in. the case of the Lord George Gordon disturbances, or of the Philadelphia riots of 1845, are arrayed against each. other for weeks, and are so absorbed in the collision as to be conscious of little else, then all that such parties do or say is as much part of the *res gestœ*.as the blows given in the homicides for which particular prosecutions may be brought." Wharton on Cr. Ev., § 262.

We think, on the facts of this particular case, the statements of the injured party were not of the *res gestœ ;* that they found no support or credence by reason of anything being done, but owe their whole force to the credit of the declarant, and therefore should have been excluded by the court.   For the error in permitting the state-. ment to be given in evidence the judgment must be reversed and a new trial awarded.

*Judgment reversed and a new trial awarded.*