DANN v. NEW YORK LIFE INS. CO.

No. 8530.

Circuit Court of Appeals, Fifth Circuit.

Feb. 4, 1938.

Raney H. Martin, of St. Petersburg, Fla., for appellants.

R. W. Shackleford, of Tampa, Fla., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This action is upon the double indemnity provision of an insurance policy issued by appellee upon the life of appellant's intestate. By the terms of the policy, the insurer agreed to pay the beneficiary $10,000 upon due proof of death of the insured, or $20,000 if such death resulted within ninety days, directly and independently of all other causes, from bodily injury effected solely through external, violent, and accidental means, espe-

516

cially providing further that such double indemnity should not be payable if the insured's death resulted directly or indirectly from illness or disease, or from infirmity of mind or body.

■ The insured died in the waters of Grandma Lake, near St. Petersburg, Florida, where he had gone to swim. The Company paid the single indemnity but denied double liability upon the alleged ground that death resulted from disease or bodily infirmity and not from accidental causes. A jury was waived, and the issue as to the cause of his death submitted to the court for its decision. The waiver was in writing, and stipulated further that the findings of the court upon the facts might be either general or special, and should have the same effect as the verdict of a jury. After hearing the evidence, the court found all issues in favor of appellee, refusing a special request of appellants to find that the insured came to his death by drowning. This appeal is from a judgment that appellants recover nothing and pay all costs. The sole issue here is whether there was substantial evidence to support the findings, without regard to whether a contrary finding might likewise be supported.

It appears from the evidence that, at about 6 o'clock on the evening of September 27, 1933, the insured, Miss Degler, Mr. Stoughton, and a woman whose name is not given, arrived at the lake. Immediately after their arrival, the insured, Miss Degler, and Mr. Stoughton went in swimming, and remained for about fifteen minutes. When they came out they went to a cottage nearby, and stayed about twenty or twenty-five minutes. Then the insured and Miss Degler went in swimming again. There was a diving board, but Miss Degler went down the steps into the water, swam out to a raft about thirty feet from the land, and was sitting on the raft when the insured met his death. He dived into the water and started swimming to the raft, swerving somewhat to the left of it. When he got about ten feet from the raft, he threw up his hands, over his head, without crying for help or making any noise, and suddenly sank beneath the surface of the calm waters, never reappearing alive. His body was recovered with grappling hooks about an hour and a half later. It

was then brought back to the dock and rolled on a barrel, when approximately a pint of liquid came out of his mouth. There was no obstruction at or near the end of the spring board from which he dived.

One witness testified to being at the lake about two weeks before the death of the insured when the latter, who had been drinking, became exhausted after swimming about ten feet, and was rescued by being pulled into a boat by the witness. The insured, who was pale, out of breath, and completely exhausted, then said: "You know, I have a bad heart. The doctor told me not to do any drinking, and I have no business being in this water like this." The witness said: "You are a dammed fool to be doing this."

An experienced pathologist performed an autopsy several weeks later, and found the heart appreciably enlarged, the liver and kidneys enlarged, the blood vessels at the base of the brain hardened, the arteries definitely affected with arteriosclerosis, the heart muscles partly destroyed and replaced with fibrous tissue, the liver and spleen showing signs of congestion, and miscroscopical sections of the lungs showing the presence of heart failure cells. As a duly qualified expert, he gave his opinion that the insured was in a state of chronic heart failure due to high blood pressure. In response to a question as to whether the exertion of swimming might reasonably have caused such attack, he responded in the affirmative. Having stated that disease was a contributing cause of the insured's death, he testified that this conclusion was based on the findings of an autopsy, and added, "If I were to sign a death certificate, I would say cardiac failure."

We think the evidence was sufficient to support a finding that the insured's death was caused by heart disease.

■ Therefore, the court committed no reversible error in concluding that the double indemnity provision of the policy had no application. Travelers' Protective Association v. Davis, 5 Cir., 67 F.2d 260, at 262; Rathman v. New Amsterdam Casualty Co., 186 Mich. 115, 152 N.W. 983, L.R.A.1915E, 980, Ann.Cas.1917C, 459.

The judgment of the District Court is affirmed.