**MUTUAL LIFE INS. CO. OF NEW YORK**
**v. HESS.**

**HESS v. MUTUAL LIFE INS. CO. OF**
**NEW YORK.**

**No. 11787.**

Circuit Court of Appeals, Fifth Circuit.

April 25, 1947.

Rehearing Denied May 24, 1947.

**2**

H. Reid DeJarnette, of Miami, Fla., for appellant and cross-appellee.

T. J. Blackwell, of Miami, Fla., for appellee and cross-appellant.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

The suit was upon a life insurance policy delivered to Frederick Richard Hess in Illinois in 1919, in which Mrs. Eleanore M. Hess, his wife, was beneficiary. She alleged her husband died by accidental drowning on June 3, 1945, having been totally disabled as the result of a slight stroke of apoplexy since January, 1940, and she sought recovery of $3,000 (with dividend accretions), the face of the policy, and also $3,000 for double indemnity in case of accidental death, and for disability payments from January, 1940, till death, all as promised in the policy which she averred had been misplaced or destroyed ten years before the death. The Insurance Company admitted the issuance and validity of the policy, and its loss or destruction, and the death, and liability for the face of the policy, but denied accidental death and total disability within the meaning of the policy, and specially pleaded that no proofs of disability had ever been furnished and that total and permanent disability had not oc-

curred, if at all, before age sixty as defined by the policy, and that the right and opportunity to examine the body and make an autopsy had been denied contrary to the policy. The judge charged the jury to find a verdict for the admitted face of the policy; but charged that disability benefits could not be recovered; and that the denial of opportunity to take an autopsy was not a defense; he submitted the question of double indemnity to the jury, who allowed it. A motion for directed verdict made by the Insurance Company was overruled as was a motion for judgment non obstante and for new trial. The Insurance Company appeals. Mrs. Hess also appeals from the denial of disability benefits.

1. As to the disability benefits, the provision is: "If the insured * * * shall before attaining the age of sixty years at nearest birthday and while this policy is in full force furnish due proof to the Company at its home office that he has become totally and permanently disabled by bodily injury or disease * * * and that such disability has then existed continuously for not less than sixty days, the Company will grant the following benefits." Hess was born Feb. 23, 1880. His disabling apoplectic stroke occurred Jan. 2, 1940, fifty-two days before his sixtieth birthday. His disability had not existed sixty days before that birthday and had not therefore ripened into permanency according to the provision of the policy, as the court held. But the policy further says the total and permanent disability must be shown by the proof within the time limited, and no proof was ever furnished, and this also was held to defeat this claim. We may add yet further that the policy says the disability must happen "before attaining the age of sixty years *at nearest birthday,*" and this makes the insured sixty years old for this purpose so soon as his sixtieth birthday is nearer than his fifty-ninth, that is to say, after he is fifty-nine and a half years old. For all these reasons we hold no disability payments were due Hess, assuming that Mrs. Hess could recover them as general beneficiary of the policy.

2. The autopsy provision is: "The Company shall have the right and opportunity to examine the body and make an

autopsy unless prohibited by law." This follows immediately the promises, contained in one sentence, to pay the face of the policy and double indemnity. It is sought to be applied only to the double indemnity, and there alone could it be of service. The question whether Hess' death was due to ordinary drowning, or whether he had another stroke or heart attack which caused or contributed to his death is a close one, and an autopsy alone could answer it certainly. The body of Hess, as he had directed in his will and orally, was cremated shortly after his death and before the Insurance Company was notified of his death, and before Mrs. Hess knew, as she testified, that the policy contained any provision about an autopsy or even any as to a double indemnity for accidental death. The judge told the jury that the double indemnity was not forfeited if she did not know of this requirement and innocently had the body cremated without giving the defendant an opportunity to make an autopsy.

There is an ancient maxim in the law of evidence, Omnia presumuntur contra spoliatorem, discussed in 16 Cyc, page 1058, 31 C.J.S., Evidence, § 152, page 844, in applying which the innocence and good intent of the destroyer of evidence is of great importance; but that is not the exact point here, for we are dealing with the terms of a contract. If this insurance was dependent on a clear condition, Mrs. Hess' ignorance of the condition and her innocence in omitting performance of it would hardly change the contract under which she claims, unless there was waiver or estoppel on the part of the Company. We find a better and more conclusive answer to the Company's position in this, that the quoted stipulation is not made a condition of the insurance nor is it declared that an omission to afford the opportunity to examine the body and have an autopsy shall forfeit the insurance or any part of it. This court had a similar provision before it in Travelers Insurance Co. v. Welch, 5 Cir., 82 F.2d 799, 800, 802, and after elaborate consideration and review of the cases held it was not a condition or a provision for forfeiture, but the reservation of a right to have evidence, which might be asserted otherwise than by forfeiture, and might be lost by not asserting it in a timely and reasonable manner. We said, "The clause does not affect the risk, but applies only after a loss and is concerned with the proof or disproof of the loss. Breach of such a post-loss right, no matter how clearly reserved in the policy, is usually held not a bar to the insurance unless expressly made so. * * * We are of opinion that exhumation on demand for an autopsy was not a condition of the insurance nor a warranty under the wording of this policy; and certainly there was no forfeiture of the insurance under the facts proven." In the Welch case an autopsy by exhumation was possible, and the beneficiary refused to allow it; it was a stronger case for the insurer than this one is. We adhere to the general principles quoted above. The autopsy clause is not available as a bar here.

3. We have greater difficulty with the case for double indemnity. The governing words in the policy are these: "That such death resulted directly from bodily injury received after the date of this policy, *independently and exclusively of all other causes,* and that such bodily injury was effected *solely* through external, violent and accidental means, and that such death occurred within sixty days after the date of such bodily injury, * * * provided however that this double indemnity shall not be payable in the event of the insured's death by his own act, whether sane or insane * * * nor if such death result *directly* or *indirectly from bodily or mental infirmity or disease of any sort."* The troublesome words we have italicized.

A brief statement of the main facts follows: Hess on Jan. 2, 1940, suffered a "stroke" which distorted his eye balls permanently, distorted his face and rendered him unable to use his legs for awhile, and left him thereafter unable to walk well or see well, and unable to do any work. He had high blood pressure or hypertension, tested and recorded three times a week till his death. The medical testimony is that a person in that condition could by strenuous exertion such as swimming provoke a heart attack or cerebral hemorrhage; and that the usual result of such a condition as the cardiogram and clinical record of Hess showed in 1943 was a heart attack, sometimes several, any one possibly fatal. On

June 3, 1945, Hess and his daughter were in surf bathing, the water rather rough and up to their armpits, as they had been for twenty minutes or more, when the daughter felt a strong undertow and started back, calling to her father. He was near, but farther out, shaded his eyes trying to see her, then dived into the waves toward her and swam several breast strokes, when he threw his head up as though he would stand on his feet, but without crying out or struggling went under again and did not reappear. She got help, he was drawn to the beach, artificial respiration failed, a doctor who arrived administered adrenalin, but pronounced him dead. The justice of the peace and ex officio coroner certified death by drowning. The doctor was of opinion that there was a heart attack but finally certified cause of death unknown. Hess was a good swimmer, but had not swum much recently.

■ Applying to these facts the words of the policy, if water involuntarily entered his lungs, preventing breathing, which is the usual case of drowning, there would be a "bodily injury", and the entry of the water would be an "external and violent means" within the policy terms, and since death followed in sixty days with nothing to suggest suicide, there would be a case made but for the words "solely", "independently of all other causes", and "not directly or indirectly from bodily infirmity or disease". These words cannot be thrown away. They limit the coverage of the insurance. A court can no more extend the coverage than it can increase the amount of the insurance. Deliberately to do either would be a sort of judicial larceny. Here the evidence points very strongly to another cause of death, a bodily infirmity or disease, active and threatening, adequate to produce death by itself, and likely to cooperate with the water in causing it. If Hess had another stroke or a heart attack which would have killed him had there been no water to enter his lungs, no double indemnity is due. It is equally plain that if he had one that would not have killed him by itself, but which disabled him so that he fell a victim to the water in which he was swimming, the water would not have been the sole cause of death, independently and ex-clusively of all other causes, for this bodily disease would indirectly have caused it. Now the plaintiff had the burden of showing that the death was of the sort defined in the double indemnity provision, as this and other courts have often said. The circumstances seem to fit either hypothesis stated above as well as a simple drowning. Circumstances equally consistent with several hypotheses prove neither; and the party having the burden must fail. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819. We think that on the present evidence the verdict should be for the defendant on this question.

■ 4. Objection was and is made to the charge because certain requests given at the instance of plaintiff are incorrect, and because they conflict with those given at the instance of defendant, making a harmful confusion. We find error here. The first instruction given on the application of the double indemnity provisions of the policy is this: "In regard to the claim for double indemnity for accidental death by drowning, I charge you that drowning would be an accidental death or injury within the meaning of the policy if and when proven by the evidence." The final instruction is: "We have now sifted this case down to the determination of the single and sole question that I have just stated to you; that is whether or not this deceased came to his death through drowning or whether or not his death was the result of natural causes." From what we have said above, it would not have been wrong to say that drowning would be a *bodily injury* within the meaning of the policy, but it was wrong to say that every accidental *death by drowning* would be an accidental death within the meaning of the policy because drowning may not have been the sole or even the main cause of the death. The sentence last quoted also is bad because the choice is not simply between drowning as the cause of death and "natural causes", in the sense of bodily infirmity or disease. Both may have cooperated, a stroke or heart failure causing the drowning which in turn extinguished life.

■ Again the court charged: "If an accident sets in motion agencies that result in death, such injury is regarded in law as the sole, direct and proximate cause of

death even though the injured person was suffering at the time from a preexisting disease or physical infirmity. You are instructed that an injury or accident which causes the death of a person in impaired health or who is suffering from disease is the cause of his death in law, even though he would not have died if his health had not been impaired." This charge is supposed to state the law of Illinois in which State the policy was delivered twenty-five years before; and such cases are cited as Rebenstorf v. Metropolitan Life Ins. Co., 299 Ill.App. 71, 19 N.E.2d 420; Sturm v. Employers' Liability Assur. Corp., 212 Ill.App. 354; Rowden v. Travelers Protective Ass'n, 201 Ill.App. 295; Christ v. Pacific Mutual Life Ins. Co., 312 Ill. 525, 141 N.E. 161, 35 A.L.R. 730; and Hibbs v. United States Fidelity & Guaranty Co., 262 Ill.App. 279. The court also charged as requested by defendant: "If you find from the evidence that the deceased's bodily or mental infirmity contributed directly or indirectly to his death, then under the circumstances the plaintiff is not entitled to recover on the double indemnity features of the contract." This charge is supposed to follow the decisions of this court in Ryan v. Continental Casualty Co., 5 Cir., 47 F.2d 472; Travelers' Protective Ass'n v. Davis, 5 Cir., 67 F.2d 260, 262; Davis v. Jefferson Standard Life Ins. Co., 5 Cir., 73 F.2d 330, 96 A.L.R. 599; Dann v. New York Life Ins. Co., 5 Cir., 94 F.2d 515. The two charges seem contradictory. We do not, however, have to decide whether we should stand to our decisions, as correct interpretations of contracts written in plain English, or should bow to the views said to be entertained by the Illinois courts, that there can be but one cause of death under such policies that which "sets in motion agencies which result in death." Even under the Illinois view, if Hess had a stroke the drowning did not produce the stroke, but the stroke produced the drowning, and was itself the first cause which set in motion the agencies that resulted in death. Moreover, the Illinois cases spoke of situations where the accidental bodily injury aggravated a preexisting disease and caused it to cause death at a later time. Such is not the case here. If Hess had a stroke or a heart failure due to his physical infirmity it either

killed him without drowning, or caused the drowning, no other likely cause for the drowning appearing. If the evidence proves that he did not have a stroke or heart failure, there was a death by drowning from an unknown cause, which the jury could conclude was accidental. We think the charges given were confusing, and not adapted to the exact problem presented by the evidence, and that it would be better to avoid abstract generalities, and instead to analyze the policy provisions and indicate to the jury the fact conclusions they might make under the evidence before them, and the proper application of the policy to each of them.

Because of the errors above pointed out, the judgment is reversed and the verdict set aside and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.