**NEW YORK LIFE INS. CO. v. SCHLATTER et al.**

No. 13999.

United States Court of Appeals, Fifth Circuit.

April 2, 1953.

Rehearing Denied May 6, 1953.

Roy D. Campbell, Jr., H. P. Farish and W. C. Keady, Greenville, Miss. (Farish,

Keady & Campbell, Greenville, Miss., of counsel), for appellant.

Charles S. Tindall, Jr., Greenville, Miss., Alfred A. Levingston, Cleveland, Miss., Wynn, Hafter, Lake & Tindall, Greenville, Miss., Levingston & Bizzell, Cleveland, Miss., for appellees.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The dominant question on this appeal is whether there is any substantial evidence to justify the jury in concluding that the insured's death resulted directly and independently of all other causes from bodily injury effected solely by accidental means and did not result directly or indirectly from disease.

Appellees were beneficiaries in a life insurance policy which appellant issued to their mother, Emma W. Schlatter, on July 2, 1929, in the face amount of $10,000 with double indemnity for accidental death. The pertinent provisions of the policy are as follows:

"The Double Indemnity provided on the first page hereof shall be payable upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurred within ninety days after such injury.

"Double Indemnity shall not be payable if the Insured's death resulted * * * directly or indirectly, from infirmity of mind or body, from illness or disease, or from any bacterial infection other than bacterial infection occurring in consequence of accidental and external bodily injury."

Emma W. Schlatter fractured her hip on April 20, 1948, and died on May 1, 1948. Appellant paid the face amount of the policy but denied liability under the double indemnity provision.

At the time of her death, Mrs. Schlatter was 63 years of age and resided at Shaw, Mississippi, with her sons who operated a small store. The living quarters for the family, consisting of three rooms and a bath, were located upstairs in the back of the store. At one time Mrs. Schlatter had operated a bakery on the premises, but her health began to decline in 1934, when she had an operation for goiter, and the year following she applied to appellant for benefits due under the policy by reason of her being totally disabled to do any kind of work. She submitted medical statements in support of her contention that high blood pressure, heart trouble and other ailments had disabled her from July, 1935. On the basis of these proofs, appellant admitted her total disability, waived payment of further premiums as of January 30, 1936, and paid her $50 per month on account of her total disability on up until the time of her death. On April 20, 1948, while alone in a day room in the rear of the store premises, the insured fell on the floor and fractured her hip.

Freddie Schlatter, one of the appellees, testified that he was in the store in the front part of the building when he heard his mother scream, that he reached her within 3 or 4 seconds and found her on the floor, her foot lying on a crumpled up rug about 18 feet from the couch on which it was her custom to rest. He picked her up, and, over objection of appellant, testified that he asked her what had happened, "and she told me that she had tripped over the cat and slipped on the rug, that she was getting a drink of water".

Within 10 minutes she was examined by a physician, who testified that he saw no evidence of shock or heart attack, found that she was suffering from a fractured hip, and ordered her taken immediately to a hospital. An operation was deferred for ten days. Mrs. Schlatter withstood the operation, but about twelve hours later died.

The record is replete with evidence covering the physical condition of Mrs. Schlatter from 1935 until the time of her death, consisting of: (1) statements by Mrs. Schlatter at periodic intervals in support of her claims for disability benefits; (2) written reports made by physicians in connection with such claims; (3) hospital records of her condition on eight separate occasions; (4) testimony of her sons and of

friends who claimed to be conversant with her physical condition; and (5) the testimony, as to her last illness, of Drs. J. G. Peeler and Charles T. Berry, who were called by appellees, and Drs. C. L. Field, T. M. Riddell, and J. B. Archer, who were called for the appellant. To state that evidence at length would unduly prolong this opinion.

It appeared without dispute that at the time of the alleged accident, Mrs. Schlatter was already suffering from high blood pressure, heart trouble and various other ailments. Though there is some conflict, Dr. Berry's testimony is typical of most of the evidence. He testified that Mrs. Schlatter's heart condition was a contributing cause of her death, and when asked whether she could have died from the heart condition irrespective of the accident, answered, "She could have. She could have died or could have lived for years." He further testified: "But that's what brought the thing on—the broken hip is what brought the whole thing on—started the momentum."

The policy was issued to Mrs. Schlatter at Shaw, Mississippi, and all parties agree that the case is controlled by the law as laid down by the Supreme Court of Mississippi. The leading case in Mississippi is United States Fidelity & Guaranty Co. v. Hood, 124 Miss. 548, 87 So. 115, 15 A.L.R. 605. There the policy was one of accident insurance against "the effects resulting directly and exclusively of all other causes from bodily injury sustained during the life of this policy solely through accidental means". 87 So. 115.

The insured in that case was affected with high blood pressure and some kidney trouble. A doctor who had examined him a few days before the accident thought that, if the accident had not occurred, he would probably have lived for a number of years. While walking in his back yard, the insured slipped and fell, striking his head on frozen ground. He died some fifteen days later. His physician thought that the accident was the primary cause of his death, his death being caused by the fall accompanied by

uremia. In pertinent part the Mississippi Supreme Court said:

"It is next insisted that the injury was not caused directly and exclusively of all other causes from bodily injuries sustained during the life of the policy solely through accidental means.

"It appears clearly from the testimony of Dr. Gamble that the active cause of the death was the accident and that the accident precipitated the other troubles; that, had the accident not occurred, death would not have resulted for some years.

"Does the provision of the policy 'the effects resulting directly and exclusively of all other causes from bodily injury sustained during the life of this policy solely through accidental means' mean that there can be no recovery if there is a latent or dormant disease which becomes active through the agency of the accident, and co-operates with the other effects of the accident in bringing about death?

"We think that, if the accident is the proximate cause of the death and sets in motion or starts a latent or dormant disease, and such disease merely contributes to the death after being so precipitated by the accident, it is not a proximate cause of the death nor a contributing cause within the meaning of the terms of the policy." 87 So. 119.

The court then quoted at length from Patterson v. Ocean Accident & Guarantee Corporation, 25 App.D.C. 46, cited a large number of other cases, and then said:

"There are numbers of cases, and especially cases in the federal court, which hold to the contrary of the doctrines herein announced, but we think the authorities cited in support of this opinion adopt the true rule. It is not sufficient to defeat the policy that the accident may have made some latent disease active, which disease contributed in some degree to the death. If the disease was active and of such character and virulence as to endanger life apart from the accident, but might

not have done so had the accident not happened, then that may be said to be a proximate contributing cause. The court ought not to construe a contract so as to defeat rather than promote the purpose of the party in taking out the insurance." 87 So. 120.

The Hood case has been consistently followed by the Supreme Court of Mississippi. Metropolitan Life Insurance Co. v. Williams, 180 Miss. 894, 178 So. 477; Equitable Life Assurance Society of United States v. Askew, 194 Miss. 347, 11 So.2d 441; Standard Life Insurance Company of the South v. Foster, 210 Miss. 242, 49 So.2d 391. Appellant points out that the Hood case involved an accident policy while the policy sued on is one of life insurance with a double indemnity provision which appellant insists should be construed more narrowly, citing White v. New York Life Insurance Co., 5 Cir., 145 F.2d 504, and Mutual Life Insurance Co. of New York v. Hess, 5 Cir., 161 F.2d 1. Appellant further insists that "the rule of the Hood case might properly be restricted and qualified here because of the exception in the present policy if 'death resulted * * * directly or indirectly from infirmity of mind or body, from illness or disease * * *,' which words were not contained in the policy in the Hood case"; contending that "these additional words of exception exclude coverage if death was caused by an accident aggravating the effects of the disease or by disease aggravating the effects of the accident. White v. New York Life Insurance Co., 5 Cir., 145 F.2d 504; Illinois Commercial Men's Association v. Parks, 7 Cir., 179 F. 794; Fidelity & Casualty Co. v. Meyer, 106 Ark. 91, 152 S.W. 995, 44 L.R.A.,N.S., 493; Benefit Association of Railway Employees v. Armbruster, 224 Ala. 302, 140 So. 356; Korff v. Travelers Insurance Co. of Hartford, Conn., 7 Cir., 83 F.2d 45."

The case of Equitable Life Assurance Society of United States v. Askew, 194 Miss. 347, 11 So.2d 441, involved an insurance policy having provisions almost identical to those in the present policy. That was a case where the insured's hip was broken when he was already so diseased that "death might be expected at any mo-ment". Under the facts of the case, the Mississippi Supreme Court reversed a directed verdict for the beneficiary and rendered judgment for the insurer, but in doing so said:

"Had the evidence disclosed that the insured was suffering with a latent disease which was put actively in motion by the breaking of his hip, a different question would have been presented. United States F. & G. Co. v. Hood, 124 Miss. 548, 87 So. 115, 15 A. L.R. 605." 11 So.2d 442.

■■ The appellant urges upon us that the statement just quoted should be disregarded as dictum. We think the language of Mr. Justice Cardozo speaking for the Court in Hawks v. Hamill, 288 U.S. 52, 59, 60, 53 S.Ct. 240, 242, 77 L.Ed. 610, is pertinent:

"At least it is a considered dictum, and not comment merely *obiter*. It has capacity, though it be less than a decision, to tilt the balanced mind toward submission and agreement. * * * In controversies so purely local, little gain is to be derived from drawing nice distinctions between dicta and decisions. Disagreement with either, even though permissible, is at best a last resort, to be embraced with caution and reluctance. The stranger from afar, unacquainted with the local ways, permits himself to be guided by the best evidence available, the directions or the counsel of those who dwell upon the spot."

See also, Badger v. Hoidale, 8 Cir., 88 F. 2d 208, 211, 109 A.L.R. 798; Yoder v. Nu-Enamel Corp., 8 Cir., 117 F.2d 488, 489; Mattson v. Central Electric & Gas Co., 8 Cir., 174 F.2d 215, 218; 14 Am.Jur., Courts, Sec. 104.

■ We conclude that the rule announced in the Hood case, and in later Mississippi decisions, controls in interpreting and applying the facts to this insurance policy and that under those decisions, the question is largely one of proximate cause. So construing the policy, it seems to us that the evidence made a case for the jury. The appellant insists that even under the rule of

the Hood case, the insured's diseases were "active and of such virulence as to endanger life apart from the accident, but might not have done so had the accident not happened." The expert opinion of some of the physicians would lead to that result, but the weight to be accorded those opinions along with the other evidence was for the jury's determination. Louisville, N. O. & T. Railway Co. v. Whitehead, 71 Miss. 451, 15 So. 890.

Appellant insists that the testimony of Freddie Schlatter concerning his mother's statements to him regarding her fall was incompetent as part of the *res gestae* under the Mississippi rule as shown by the cases of Mayes v. State, 64 Miss. 329, 1 So. 733, and Simon v. Dixie Greyhound Lines, 179 Miss. 568, 176 So. 160. In a federal court the rule, whether federal or state, which favors the reception of the evidence governs. Rule 43(a), Federal Rules of Civil Procedure, 28 U.S.C.A. Under the leading case of Travellers' Insurance Company v. Mosley, 8 Wall. 397, 75 U.S. 397, 19 L.Ed. 437; followed by this Court in Stewart v. Travelers Protective Ass'n of America, 5 Cir., 81 F.2d 25 (see also Annotation 163 A.L.R. 15, 201), the evidence was admissible as part of the *res gestae*.

There was additional evidence of a circumstantial nature to show the accident. When Freddie reached his mother's side, he found the rug "crumpled up under the sink and her foot was on it". The doctor, who examined her about ten minutes after the fall, testified that she did not give evidence of suffering from any causes other than the fall.

We have carefully examined the instructions requested by the appellant and refused by the court, and in our opinion their refusal was without error. After the appellant had objected to the original charge and the court had given the jury additional clarifying instructions, the judge concluded "Now if you gentlemen have any exceptions or objections you may dictate them into the record." There were no further objections, and in view of Rule 51 of the Federal Rules of Civil Procedure, we do not find it necessary to discuss other criticisms of the court's charge. We find no reversible error in the record and the judgment is therefore

Affirmed.

HOLMES, Circuit Judge (concurring).

The pertinent policy provisions are (1) that death must have "resulted directly and independently of all other causes from bodily injury effected solely through external violent and accidental means," and (2) in the next paragraph, that death must not have resulted "directly or indirectly from illness or disease, or from any bacterial infection other than bacterial infection occurring in consequence of accidental and external bodily injury." The first is broader than the second, and impliedly includes the second under the maxim that the greater includes the less. The first includes the second because it includes death that resulted directly from bodily injury and "independently of all other causes"; therefore independently of illness, disease, or any bacterial infection except such occurring in consequence of such bodily injury.

The first provision above quoted is in substance the same as in the policy before the court in U. S. Fidelity & Guaranty Co. v. Hood, 124 Miss. 548, 87 So. 115, 15 A.L.R. 605, wherein the court said:

"Does the provision of the policy 'the effects resulting directly and exclusively of all other causes from bodily injury sustained during the life of this policy solely through accidental means' mean that there can be no recovery if there is a latent or dormant disease which becomes active through the agency of the accident, and co-operates with the other effects of the accident in bringing about death?

"We think that, if the accident is the proximate cause of the death and sets in motion or starts a latent or dormant disease, and such disease merely contributes to the death after being so precipitated by the accident, it is not a proximate cause of the death nor a contributing cause within the meaning of the terms of the policy." 124 Miss. at page 572, 87 So. at page 119.

In case of doubt or ambiguity in the language of an insurance policy, that interpretation should be given which favors the insured rather than the insurer. An injury that might naturally produce death to a person of a certain age or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his age or previous health had been different. There are a number of cases which hold to the contrary, says the Mississippi Supreme Court, but it thinks the Hood case adopts the true rule. The opinion in that case shows that the Mississippi court aligned itself with those jurisdictions which apply the rule of proximate cause to insurance policies.

The Mississippi law, under the terms of the policy in the instant case, does not require the court or the jury to consider the cause of causes; it would be impracticable to do so. As Bacon says, it were infinite with the law to consider causes that would lead us back to the birth of a person, "for if he had never been born the accident would not have happened." It is the cause causing the death, not the condition without which the death would not have occurred (the *causa causan,* not the *causa sine qua non*), that fixes liability under a policy for accident insurance or under a provision for double indemnity in case of death from bodily injury effected solely through violent and accidental means.

There is nothing in the policy before the court to indicate that remote causes of an accidental death were to be considered or that there should be any departure from the maxim: *Causa proxima non remota spectatur.* This maxim, although of general application, is usually cited with reference to marine insurance; it qualifies the policy provisions so as to read that death must have resulted directly and proximately, and independently of all other proximate causes, from bodily injuries. In the next paragraph, the negative clause should be interpreted to read that death must not proximately have resulted directly or indirectly from illness or disease. Whenever the words "contributing cause" are used in the policy, the qualifying word *proximate* is supplied by a fair interpretation. Other-

wise the clause would be interpreted to read thus: "Death must not have resulted directly or indirectly, proximately or remotely, from illness or disease," which would be absurd. Direct, remote, and proximate, are words familiar to lawyers, and they have a distinct legal signification when applied to causes.

The Hood case was decided in 1920, and has been steadfastly adhered to in Mississippi for over three decades. This is demonstrated in the able brief for the appellees, citing Mississippi decisions and calling this court's attention to the general rule that they are entitled to an affirmance of the judgment (which is based on a jury verdict) if the evidence was such that fair and reasonable men might reach different conclusions upon the point in issue.