Jenetta W. PICKENS, Plaintiff-Appellee,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Defendant-Appellant.

No. 26756.

United States Court of Appeals Fifth Circuit.

Aug. 4, 1969.

---

2. See, e. g., Atchison, T. & S. F. Ry. v. Wells, 265 U.S. 101, 44 S.Ct. 469, 68 L. Ed. 928; 3 Moore, Federal Practice, Par. 0.407 et seq. (2d Ed. 1965).

Sam C. Pointer, Jr., Brown, Pointer & Pointer, Birmingham, Ala., for appellant.

Rogers, Howard, Redden & Mills, L. Drew Redden, William H. Mills, Birmingham, Ala., for appellee.

Before THORNBERRY and DYER, Circuit Judges, and FISHER, District Judge.

FISHER, District Judge:

This appeal arises from a suit involving the "accidental death" coverage of an insurance policy on the life of Erskine G. Pickens. Jenetta W. Pickens as beneficiary brought a complaint alleging her husband died accidentally by drowning, directly and independently of all other causes. Disputing this, the insurance company asserted that death was caused or contributed to by some illness, disease, or physical or mental infirmity, from medical treatment therefor, or was the result of suicide, drugs, gas or fumes. The company also answered that proof of the accidental nature of death was not submitted in accordance with policy requirements, and that contrary to policy provisions, its request for an autopsy was denied.

In the district court, the defendant produced no testimony and moved for a directed verdict at the close of the plaintiff's evidence. The court denied the motion and submitted special interrogatories to the jury which were answered favorably to the plaintiff. Accordingly, the court denied a motion for judgment notwithstanding the verdict and entered judgment for $18,500.00, the amount of the additional indemnity feature of the policy. An appeal was taken alleging error in refusing to direct a verdict for the defendant. We disagree and affirm the judgment of the district court.

The bizarre facts surrounding Pickens' death were exceptionally enigmatic. On June 13, 1966, Pickens went fishing in a small boat on a Warrior River tributary in Winston County, Alabama. The next afternoon his body was discovered hanging over the side of the boat, the left arm and head face upward dangling down into the water. Pickens' clothes were dry, however, and there was no indication of a struggle or violence of any sort. The assistant coroner, Douglas Grant, conducted an on-the-scene investigation which revealed that the boat contained food, fishing equipment and several fishing lines still baited. Pickens' face was discolored, swollen, and water was expelled from the chest cavity when mashed. The body was taken to a local funeral home where Grant, also a licensed mortician employed by the home, embalmed and prepared the body for burial. No bruises, cuts, abrasions or other injuries were found. Liquids of various colors were removed from the lungs but these were not measured or analyzed, nor was an autopsy performed. Speculating as to how death occurred, the coroner's jury, under the supervision of

Grant, returned a verdict of "drowning due to probable heart attack." Pickens' body was interred on June 16, 1966.

Four weeks after the funeral, Mrs. Pickens filed a claim for additional indemnity provided by the policy for accidental death. Copies of the death certificate and a newspaper article reflecting the coroner's jury verdict were submitted along with a form provided by the insurer. Equitable refused to pay and this suit followed.

Equitable alleges four particular errors in the court's refusal to direct a verdict. The first contention is that Equitable was entitled to rely upon plaintiff's admission under Federal Rule of Civil Procedure 36(a) [1] that the insured committed suicide, a cause of death expressly excluded from double indemnity coverage. Prior to trial, Equitable filed requests for admissions requesting *inter alia* an admission that Erskine Pickens committed suicide. While all other requests were admitted or denied, the plaintiff did not respond to this request. Thus, the defendant argued that Rule 36 (a) which provides that requests not specifically denied or objected to in writing shall be deemed admitted should have been applied. The trial court held that a directed verdict on this basis would "violate every principle of Federal procedure." The Court accepted the Plaintiff's explanation that failure to respond was simply an inadvertent omission. However, the court concluded that the omission should be regarded as an evidential admission which the jury could consider along with the other evidence. The jury found that suicide had not been committed.

Equitable argues that it was reversible error not to direct a verdict because the nature of a Rule 36 admission is such as to judicially foreclose the issue, and because Equitable relied detrimentally on the admission by omitting testimony that Pickens had suicidal tendencies for which he received treatment in 1962, and testimony indicating possible reactivation of these tendencies.

Rule 36(a) prescribes objections as remedies for improper requests for admissions. Yet, despite plaintiff's inattentive neglect in not objecting to or denying the request, we do not feel that an admission should be attributed because the request was improper to such an extent as to place it without the purview of Rule 36(a). Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove. 4 Moore's Federal Practice, 36.04[2]; Wright, Federal Courts, sec. 89 at p. 343. Accordingly, requests for admissions as to central facts in dispute are beyond the proper scope of the rule. Such requests have consistently been held improper. Kasar v. Miller Printing Machine Co., 36 F.R.D. 200 (W.D.Penn., 1964); Lantz v. New York Central R. R. Co., 37 F.R.D. 69 (N.D.Ohio, 1963); Fuhr v. Newfoundland-St. Lawrence Shipping Ltd., 24 F.R.D. 9 (S.D.N.Y. 1959). The issue of suicide was crucial

---

1. Federal Rules of Civil Procedure 36(a) provides in pertinent part:

   "After commencement of an action a party may serve upon any other party a written request for the admission by the latter of the genuineness of any relevant documents described in and exhibited with the request or of the truth of any relevant matters of fact set forth in the request * * * Each of the matters of which an admission is requested shall be deemed admitted unless, *within a period designated in the request*, not less than 10 days after service thereof or within such shorter or longer time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part, together with a notice of hearing the objections at the earliest practicable time.

to a determination of this case. Thus, the plaintiff's failure to reply to the request does not fall within the ambit of Rule 36(a) and constitutes no admission of suicide.

■ Alternatively, if plaintiff's omission were an admission, under the particular facts of this case it would be grossly unjust to treat it as anything other than evidential. The omission was clearly inadvertent rather than deliberate. Thus, the general argument in favor of regarding such admissions as judicial is inappropriate. Considering the common sense aspect that the essence of plaintiff's suit negated the possibility of an admission of suicide, we think submission of the issue to the jury afforded the defendant all the benefit to which it could possibly have been entitled from the omission. Our distinct policy in situations of this type is to favor substantial justice over technical contentions. Hartley & Parker, Inc. v. Florida Beverage Corp., 348 F.2d 161 (1965, 5th Cir.).

■ Further, we are unconvinced that Appellant actually relied detrimentally on the admission in investigating and presenting its case since to do so necessitated ignoring explicit denials of four other separate requests pertaining directly to the suicide question. Moreover, Equitable did not mention the admission issue until the close of plaintiff's evidence. The plaintiff's attorney made it quite clear at an earlier pretrial conference that suicide was not admitted. In any event, the plaintiff had no personal knowledge of the facts inquired about and the appellant admits that none of the facts point toward suicide. We therefore agree with the trial court that there was no convincing evidence that the appellant was trapped into reliance upon an admission of suicide.

Appellant's second point is that the evidence was insufficient to prove that death was not caused or contributed to by some internal, non-accidental factor in view of the death certificate showing death to be due to heart attack. Equitable concedes that drowning qualifies as "accidental death" under the policy, and also that there was sufficient evidence for the jury to find that Pickens drowned. However, Equitable argues there was a complete failure to prove an additional requirement that it be shown that death was independent of all other causes except drowning. It is argued that under Alabama law a *prima facie* case of heart attack was established by the recitals of the death certificate. Further, Equitable avers that since this is an unfathomable case where the factual circumstances point equally to several explanations of how death occurred, the language of Mutual Life Ins. Co. of New York v. Hess, 161 F.2d 1 (5th Cir. 1947), should control.[2] Our conclusions are that the *prima facie* case was adequately rebutted; the *Hess* case is factually inapplicable; and on balance, the evidence was sufficient to raise a jury question.

2. " * * * there would be a case made but for the words 'solely', independently of all other causes', and 'not directly or indirectly from bodily infirmity or disease.' These words can not be thrown away. They limit the coverage of the insurance * * * Here the evidence points very strongly to another cause of death, a bodily infirmity or disease, active and threatening, adequate to produce death by itself, and likely to cooperate with the water in causing it. If Hess had another stroke or a heart attack which would have killed him had there been no water to enter his lungs, no double indemnity is due. It is equally plain that if he had one that would not have killed him by itself, but which disabled him so that he fell a victim to the water in which he was swimming, the water would not have been the sole cause of death, independently and exclusively of all other causes, for his bodily disease would indirectly have caused it. Now the plaintiff had the burden of showing that the death was of the sort defined in the double indemnity provision, as this and other courts have often said. The circumstances seem to fit either hypothesis stated above as well as a simple drowning. Circumstances equally consistent with several hypotheses prove neither; and the party having the burden must fail.

161 F.2d 1 at p. 4

Appellant is correct in observing that under Alabama law the death certificate recitation of "probable heart attack" is *prima facie* evidence that Pickens did sustain a heart attack.[3] Moreover, in most circumstances the word "probable" does not weaken the *prima facie* case. Jefferson Standard Life Ins. Co. v. Wigley Tellis, 248 Ala. 676, 29 So.2d 218 (1947). However, competent evidence can refute the *prima facie* case. Liberty National Life Insurance Co. v. Tellis, 226 Ala. 283, 146 So. 616. Douglas Grant, who prepared the death certificate and empanelled the coroner's jury, testified that he and the coroner's jury had no basis for their statement of "probable heart attack", that the reference to heart attack was pure speculation and in fact the only visible factors pointed solely to drowning as the cause of Pickens' death. We think this adequately rebutted the *prima facie case.* Gay v. Pacific Mutual Life Ins. Co., 237 F.2d 448 (5th Cir. 1956); Woodmen of the World Life Insurance Co. v. Phillips, 258 Ala. 562, 63 So.2d 707 (1953).

The *Hess* case involved a deceased insured with a past history of heart trouble, hypertension and similar maladies making him a near invalid. In addition, the factual circumstances pointed strongly to death due to bodily infirmity. Here there are simply no circumstances indicating Pickens had prior heart trouble or died from a heart attack. On the other hand, the evidence does support the theory that Pickens may have fallen or had a temporary blackout. Whether these constitute a disease or infirmity within the exclusionary clause of the policy is a jury question under Alabama law. Fidelity Service Ins. Co. v. Jones, 280 Ala. 195, 191 So.2d 20 (1966). There was enough evidence to go to the jury and no error in refusing to direct a verdict on this point.

Next, Equitable argues that it was entitled to a directed verdict because "due proof" of loss was not submitted in accordance with policy requirements. Under Alabama law, due proof and a *prima facie* case of liability must be established prior to the filing of a suit. Equitable Life Assurance Society v. Dorriety, 229 Ala. 352, 157 So. 59 (1934). Here, Mrs. Pickens submitted a company form which stated death was caused by "accidental drowning" together with the death certificate and a newspaper clipping. The company argues that its form was solely a *notice*-of-loss form rather than a *proof*-of-claim form, and therefore plaintiff totally failed to submit a proof of claim. Equitable further argues that the instrument submitted by plaintiff not only failed to present a substantial *prima facie* case of liability as required, but actually brought the claim without the double indemnity provisions of the policy by referring to an internal contributing cause. The claim therefore was barred and the insurance company could properly "close its files" until other information was submitted. Equitable Life Assurance Society v. Foster, 230 Ala. 209, 160 So. 117 (1935).

We do not perceive the Alabama law to embrace such an arbitrary rule as to allow an insurance company to simply close its files until subjectively satisfied that a *prima facie* case has been presented. Whatever the Alabama rule, however, we note that the only requirements mentioned in the policy respecting proof of claim were complied with by the claimant; *viz.*, that such be in writing and submitted within 90 days of the insured's death. Although the company advised that the proof submitted was insufficient, Mrs. Pickens was never requested to submit further verification. More, Equitable proceeded to deny the claim on the basis of its own independent investigation. Denial on this basis obviated the necessity of further proof to the insurance company from Mrs. Pickens. Thus, the question of sufficient and substantial proof of claim is immaterial to the issue of a directed verdict. The

---

3. Title 22 Code of Alabama § 42 (1940, Recompiled 1958)

trial judge was again on sound ground in not directing a verdict on this point.

Finally, Equitable argues that a verdict should have been directed because Mrs. Pickens refused to honor the policy provision granting the insurance company permission to perform an autopsy. Equitable requested an autopsy some six weeks after Mrs. Pickens presented her claim and two and one-half months after Mr. Pickens' funeral. Since Equitable had announced its intent to deny the claim for accidental death benefits, Mrs. Pickens simply did not respond to this or another later request. Equitable argues that honoring the request was a condition precedent to liability. Thus, recovery should have been barred as a matter of law.

The company's position is without merit. The request for an autopsy must be made within a reasonable time, and if reasonable minds might differ, it is always a jury question. Order of United Commercial Travelers of America v. Moore, 134 F.2d 558 (5th Cir. 1943). The jury resolved this issue against the company. Thus, plaintiff's failure to respond to the autopsy request is also an immaterial issue on appeal since the jury found the request unreasonable. Alternatively, we observe that the autopsy provision was not made a condition of insurance nor did the policy provide for forfeiture if an autopsy were not permitted. Neither did the company exhaust available legal remedies, nor was it shown here that the insurer could not have procured the autopsy by proper proceedings despite the beneficiary's silence. We have held that a fair interpretation of similar autopsy provisions is that if consent is not given, the insurer may appeal to a court to determine the propriety of its request. Failure to pursue this remedy is ample ground for denying the right to contend for non-liability, Employers Liability Assurance Corp. Ltd. v. Dean, 44 F.2d 524 (5th Cir. 1930); Travelers Insurance Co. v. Welch, 82 F.2d 799 (5th Cir., 1936).

We have carefully considered all points raised by the appellant and have found them to be without merit. Accordingly, the judgment of the district court is affirmed.

Affirmed.